Guido SAPIENZA, by his parent, Basil Sapienza, David Fong, by his parent, Shew T. Fong, Individually and on behalf of all other newspaper carrier boys and girls who are similarly situated, Martin Cohen d/b/a Teenage Deliveries, Plaintiffs,

v.

NEW YORK NEWS, INC., Gaynor News Co., Chicago Tribune, Leonard Cohen, News Home Delivery, Inc., Defendants.

No. 79 Civ. 5268 (GLG).

United States District Court, S. D. New York.

Oct. 29, 1979.

Tarnow & Landsman, P. C., New York City, for plaintiffs, by Herman H. Tarnow, New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendants, by Frederick T. Davis, Ann R. Loeb, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

In this motion for preliminary injunctive relief, the plaintiffs have alleged violations of the antitrust laws by the New York News, Inc. ("the News") (which publishes the *Daily News* and the *Sunday News*) and one of its distributors, Leonard Cohen, News Home Delivery, Inc. ("Leonard Cohen").[1] Leonard Cohen, either in his capacity as president of the corporation or in an individual capacity, has been a distributor, or carrier, of the News in the Bronx, New York, since 1970. He obtains the newspapers from the News and employs newsboys and newsgirls to deliver the papers to subscribers in their homes. Leonard Cohen now has a contract,[2] called the Independent

---

1. Although the Chicago Tribune is also a named defendant, it is not clear what its role was in the alleged antitrust violations. Gaynor News Co., which is also a named defendant, seems to have been added under the apparently mistaken belief that Gaynor was a subsidiary of the News and a retail distributor of newspapers.

2. The current contract was signed on September 16, 1979. Leonard Cohen was previously

Home Delivery Carrier Agreement ("Agreement"), with the News forbidding his delivery of newspapers other than the *Daily News* and the *Sunday News* in his "territory of prime responsibility," which is defined in the Agreement. The Agreement specifies certain responsibilities and benefits for the carrier, Leonard Cohen, within his territory of prime responsibility.[3] In addition, although not as a part of the Agreement, Leonard Cohen receives as "operational assistance" a credit of a few cents on each copy of the *Daily News* and the *Sunday News* that he home delivers.

The plaintiffs in the instant action are newsboys, who deliver the *Daily News* and the *Sunday News* to subscribers for Leonard Cohen; and Martin Cohen, who is the son of Leonard Cohen, and who distributes the *New York Times* under a trade style of "Teenage Deliveries," using Leonard Cohen's facilities and newsboys and newsgirls. The plaintiffs allege, *inter alia*, that the defendants, in forbidding Leonard Cohen's newsboys and newsgirls to deliver papers other than the *Daily News* and the *Sunday News*, have violated sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1, 2, and 3, and section 3 of the Clayton Act, 15 U.S.C. § 14. The newsboys allege that they are losing customers and income because they can no longer deliver the *New York Times* as well as the *Daily News* and the *Sunday News*; Martin Cohen alleges that he is being driven out of business because he cannot use Leonard Cohen's facilities and newsboys.

The plaintiffs seek a preliminary injunction enjoining the News from "[t]erminating any Independent Carrier who is a signatory to an Independent Home Delivery Carrier Agreement with the New York News, Inc., if that Carrier allows its privately owned facilities, agents, servants and employees, including newspaper carrier boys

and girls, to home deliver [other] newspapers [along] with copies of the *Daily News* supplied by the Carrier" and from "[i]nterrogating, harassing, or intimidating newspaper carrier boys and girls, while they are delivering their newspapers."

█ A preliminary injunction "is an extraordinary and drastic remedy which should not be routinely granted." *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977). Before such relief may be granted, it has been held, "there must be a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 54 (2d Cir. 1979) (quoting *Caulfield v. Board of Education of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978)) (emphasis in original). *See also Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1358 (2d Cir. 1976).

█ The plaintiffs in this case fail to meet that standard. The first and indispensable element of the test is a showing of possible irreparable injury. The plaintiffs' demonstration of injury, however, suffers from several defects. First, although the newsboys' affidavits show that they are injured if they are not able to deliver the *Times* as well as the *Daily News* and the *Sunday News*, they do not show that they are, in fact, unable to deliver both papers. What they cannot do is deliver the *Times* while delivering the *Daily News* and *Sunday News* for Leonard Cohen, who is under contractual restrictions. The newsboys could, however, deliver the *Times* along with copies of the *Daily News* and the

---

under a similar contract with the News, signed on November 5, 1970.

**3.** Among the benefits of the Agreement to the carrier is aid in increasing circulation. Among the carrier's responsibilities are participation in circulation promotion programs, maintaining

up-to-date subscriber lists, and investigating subscriber complaints. In addition, the carrier is forbidden by the contract to "[s]ell or distribute copies of any other newspaper or advertising matter of any other newspaper in his territory of prime responsibility."

*Sunday News* obtained from a distributor not subject to the restrictions and benefits of the Agreement. Similarly, Martin Cohen's affidavit shows that he is injured if he is unable to deliver both the *Times* and the *News*. He could, however, deliver both papers as long as he did not use Leonard Cohen's facilities and newsboys.

Second, the injury of which the plaintiffs complain results from the existence of Leonard Cohen's contract with the News. If Leonard Cohen had not signed the Agreement, he and the plaintiffs would be under none of the restrictions of which the plaintiffs complain. The newsboys could deliver both papers and Martin Cohen could use Leonard Cohen's facilities and deliverers. Yet, the plaintiffs ask that the defendants be enjoined from terminating the contract. Thus, they are in the odd position of seeking to enjoin what would be, for the newsboys, a satisfactory remedy.

Third, much of the injury of which the plaintiffs complain has already occurred, since, beginning with the signing of the contract of September 16, 1979, Leonard Cohen has not allowed his deliverers to carry the *Times* and has not allowed Martin Cohen to use his facilities in delivering the *Times*. Thus, an injunction would provide little relief to the plaintiffs.

■ Fourth, the plaintiffs have not demonstrated that their alleged injury could not be cured by money damages. The injury they allege is loss of profits from loss of customers, which ordinarily can be calculated with a fair degree of certainty. If the plaintiffs ⁚ have an adequate remedy at law—such as damages—equitable relief cannot be granted.[4] *See, e. g., SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 363 (2d Cir. 1974).

In sum, the plaintiffs have not shown sufficient evidence of possible irreparable injury to warrant the imposition of the drastic remedy of a preliminary injunction. It is not clear that the plaintiffs would benefit from the relief they request. Furthermore, even if there is harm to the plaintiffs that would be prevented by the granting of a preliminary injunction, the plaintiffs have not demonstrated that the injury is likely to be irreparable.[5]

■ Even if the plaintiffs were able to demonstrate possible irreparable injury, however, they would fail to satisfy the second part of the test. In order to justify the granting of a preliminary injunction, the plaintiffs must also show either "probable success on the merits" or "sufficiently serious questions" plus "a balance of hardships tipping decidedly" toward the plaintiffs.

■ The plaintiffs have not shown that they are likely to succeed on the merits. They have alleged violations of sections 1, 2, and 3 of the Sherman Act and section 3 of the Clayton Act. Of these provisions, section 3 of the Clayton Act offers the plaintiffs their best chance of success. That section makes it unlawful "to lease or make a sale or contract for sale of goods . . . on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods . . . of a competitor or competitors of the·lessor or seller, where the effect of such lease, sale, or contract for sale on such condition, ·agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 14.

4. Oddly, the plaintiffs seem to admit that damages are the appropriate remedy, since they request only a preliminary injunction and treble damages, but no permanent injunction. Complaint of Plaintiffs, at 15–16.

5. In urging the appropriateness of a preliminary injunction, the plaintiffs rely heavily on *Lepore v. New York News Inc.*, 346 F.Supp. 755 (S.D.N.Y.1972). In *Lepore*, however, the situation was very different. There, the New York News had cut off altogether the supply of one of the plaintiff newspaper carriers. Here, by contrast, neither Leonard Cohen nor the plaintiffs are being threatened with the cutting off of their supply. The News has made it clear that it is willing to supply Leonard Cohen with newspapers either as a contract dealer subject to the restrictions of the contract or as a noncontract dealer not subject to those restrictions.

The Agreement between the News and Leonard Cohen, however, does not condition sale of the *Daily News* and the *Sunday News* on an agreement not to distribute other newspapers. It merely conditions the receipt of special benefits on the agreement not to distribute other newspapers. The News already sells newspapers to many other distributors who are not subject to the restrictions of the Agreement, and it claims that it would also be willing to sell to Leonard Cohen on a noncontract basis.

Furthermore, it does not appear that the effect of the Agreement is "to substantially lessen competition or tend to create a monopoly." Although the plaintiffs do not specifically allege the size of the relevant market, in paragraph 22 of their complaint they suggest a market consisting of "all daily morning metropolitan newspapers in the metropolitan New York area." Neither do the plaintiffs allege what portion of the relevant market is foreclosed by the actions of which they complain; in fact, the plaintiffs complain specifically only about one Agreement with one carrier, Leonard Cohen, in one area of the Bronx. In a market with several competing newspapers, and untold numbers of newsstand operators and other retail distributors selling newspapers to millions of consumers, it seems unlikely that these actions will be found to "substantially lessen competition or tend to create a monopoly." Finally, the News cites numerous economic justifications for its policy of entering into agreements with its carriers.[6] The Supreme Court has held that economic justifications may, in certain circumstances, validate exclusive dealing contracts that would otherwise be proscribed by section 3 of the Clayton Act. *See Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 334–35, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961).

■ The plaintiffs have also failed to show probable success on the merits of their claims under the Sherman Act. Since the proscription of section 3 of the Clayton Act is "broader" than that of the Sherman Act, *Tampa Electric Co. v. Nashville Coal Co., supra*, 365 U.S. at 335, 81 S.Ct. at 632, 5

L.Ed.2d at 591, anticompetitive impact is unlikely to be found under section 1 of the Sherman Act if it has not been found under the Clayton Act claim. Furthermore, since such vertical restraints as are alleged here are to be judged by "the rule of reason" under section 1 of the Sherman Act, *see Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), the economic justifications mentioned in the discussion of section 3 of the Clayton Act, *supra*, are relevant here as well.

■ In order to succeed on their claim under section 2 of the Sherman Act, the plaintiffs must show either actual monopoly power or an attempt to monopolize (including a showing of specific intent), neither of which appears from the facts alleged in the plaintiffs' complaint. The plaintiffs have made no showing at all of the relevance of section 3 of the Sherman Act, which concerns trusts in the District of Columbia and the Territories of the United States.

Turning to the alternative method by which the plaintiffs could satisfy the test for the granting of a preliminary injunction, the Court finds that they again have made a weak showing. Because of the weaknesses of their case, as already discussed, the plaintiffs may not be able to meet the requirement that they raise "sufficiently serious questions going to the merits to make them a fair ground for litigation."

■ Nor can the plaintiffs satisfy the second part of the alternative test—"a balance of hardships tipping decidedly toward the party requesting the preliminary relief." The newsboys may well suffer hardship from being unable to deliver papers for both their *News* distributor, Leonard Cohen, and their *Times* distributor, Martin Cohen. However, they did survive economically distributing only the *News* before Martin Cohen started his business and probably could do so again. Alternatively, they could distribute copies of the *Times* obtain-

6. See note 3 *supra*.

ed from another source. And, although the other plaintiff, Martin Cohen, will certainly suffer hardship from being unable to use Leonard Cohen's facilities and deliverers, that hardship stems from a chance he took in starting his business in reliance on an arrangement with his father that he should have known was apparently in violation of his father's contract with the News.

In any event, these hardships must be balanced against those of the News, which, under the terms of the preliminary injunction, would be prohibited from enforcing its contract with Leonard Cohen and would be required to continue to pay its "operational assistance" to him. It is not clear that the hardships tip "decidedly" toward the plaintiffs.

In the final analysis, the plaintiffs' position fails because they do not have a claim against the News. The dispute here is between the defendant Leonard Cohen and the defendant the News. Apparently, Leonard Cohen wished to be a contract deliverer and receive operational assistance while at the same time being able to deliver other newspapers in his area of prime responsibility. Without prejudging the merit of any contractual or public law claim that Leonard Cohen might have, one can easily see that such a claim is not the claim of the plaintiffs, or even one as to which they would have standing.

It appears that Leonard Cohen attempted to avoid the restrictions under his earlier contract by having his son form his own business for delivery of the *Times*, using Leonard Cohen's delivery facilities. The News was apparently not deceived by this transparent arrangement. Leonard Cohen now attacks the contractual relationship into which he voluntarily entered only a month ago by means of the device of bringing suit in the names of his employee newsboys and his son. This approach, too, is rather transparent.[7]

For the reasons stated, the plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.

---

**7.** One of the defendants, the News, has also challenged the propriety of the plaintiffs' being represented by Herman Tarnow in this litigation, since Mr. Tarnow is also counsel for defendant Leonard Cohen and is likely to be called as a witness in this case. The Court notes the existence of this issue but does not consider it at this time.