**Shirley HUTTON, Plaintiff,**

v.

**Mirek KLABAL and Klabal Gallery, Inc., Defendants.**

**No. 87 Civ. 1167 (VLB).**

United States District Court,
S.D. New York.

Oct. 16, 1989.

Murray Schwartz, New York City, for plaintiff.

Gilroy Downes and Horowitz, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This action arises out of an agreement between defendant Mirek Klabal ("Klabal"), owner and manager of defendant art gallery Klabal Gallery, Inc. ("KGI") to purchase and later re-sell etchings for plaintiff Shirley Hutton. Although Hutton delivered the full purchase price to the defendants, they never delivered all of the artwork to her and have not resold it.

Hutton asserts seven claims in her amended complaint. First she claims that the defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1961 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act (RICO). Next she claims that Klabal and KGI breached the agreement to purchase and resell the etchings. Third, Hutton claims that defendants defrauded her and made misrepresentations by asserting that the artwork would increase in value by 100% in one year. Fourth, she claims that Klabal and KGI converted the money she paid to them for the artwork. Fifth, she claims that the defendants have been un-

justly enriched by retaining some of the artwork after she has paid for it in full. Sixth, she seeks to impose a constructive trust on monies and artwork held by Klabal and KGI which are related to the dealings between plaintiff and defendants. Finally, she seeks an injunction to prevent the defendants from selling, transferring or pledging the artwork or using the money paid by Hutton.

Presently before me is defendants' motion to dismiss all save the breach-of-agreement claim. Defendants seek to dismiss the RICO and fraud claims for lack of specificity in pleading, pursuant to Fed.R. Civ.P. 9(b). They seek dismissal of the RICO and fraud claims, as well as the conversion, unjust enrichment, constructive trust and injunction claims, for failure to state claims upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

## I.

The facts set forth in this memorandum order for purposes of defendants' motion to dismiss are predicated upon the allegations of the complaint, and are deemed to be true.

In December, 1983 Klabal telephoned Hutton at her Aspen, Colorado home to see if she was interested in purchasing some artwork as an investment.

Later that month, Klabal met Hutton in New York. He represented himself as a gallery owner and expert in the purchase of art as an investment. Klabal wanted Hutton to consider purchasing some etchings by the renowned painter Joan Miro. Because Miro had recently died, Klabal felt that her artwork would be an especially good investment. Klabal told Hutton that the etchings would double in value in one year, and that after a year Klabal would resell the etchings, with 80% of the profits going to Hutton, 20% to Klabal.

Hutton was reluctant to buy because she had no room to display artworks. Klabal

pointed out that the artwork was a good investment even if she did not display it.

Hutton agreed to buy two sets of Miro etchings: the six-frame "El Pi De Formentor Suite" ("Formentor"); and the six-frame "Martipol Suite" ("Martipol"). Each etching was to be gold-framed.

The total cost for all twelve etchings was $78,000, or $6,500 per etching. Hutton made full payment in three installments in January, February and March, 1984.

Hutton wished to display the art at a party in Aspen on March 8, 1984. In late February, Klabal informed her that the framing of the Formentor etchings would not be completed in time for the party. The Martipol etchings, he asserted, were being held for her in New York at the Silverberg Galleries.

On March 7, 1984 James Heuer, Klabal's attorney, sent a letter to Hutton's attorney stating that Klabal would personally deliver the Formentor Suite to Hutton in Aspen on March 8. On March 7 Heuer also sent a letter to the Silverberg Galleries confirming that the gallery was holding Hutton's Martipol Suite for plaintiff.

On March 8, Klabal arrived at Hutton's party with a different set of six silver-framed Formentor etchings; he represented that Hutton's Formentor etchings were being framed in gold in San Francisco. When he left the party, Klabal took two of these Formentors with him, leaving four behind.

Months passed and no more etchings were delivered. In September, 1984 Hutton inquired at the Silverberg Galleries about her Martipol etchings. She was informed that Klabal had never paid for the Martipol etchings and that the gallery could not release them to her.

In December, 1984 Klabal brought one of the four Formentors from Aspen to New York. He took Hutton to a framing establishment and had the etching framed in gold. He also showed Hutton six Martipol etchings and said he was having them framed in gold for her. She never received these etchings.

Through 1985 and 1986 Klabal maintained that he would sell the etchings for $13,000 each. No such sale took place. Klabal did, however, give Hutton a Picasso Aquatint, and he paid her $5000 in September, 1985 and $5000 in October, 1985. In December, 1985 Klabal sent Hutton a Keefe bronze bust, which she had not requested and did not want.

## II.

### A. Fraud and Rule 9(b)

Under New York law, a cause of action for fraud must allege misrepresentation of an existing material fact, known to be untrue by the offending party, and made with intent to deceive and for the purpose of inducing the other party to act upon it. *Roney v. Janis*, 77 A.D.2d 555, 430 N.Y. S.2d 333, 335 (1st Dep't 1980), *aff'd* 53 N.Y.2d 1025, 442 N.Y.S.2d 484, 425 N.E.2d 872 (1981).

Fed.R.Civ.P. 9(b) reads: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind may be averred generally."

The purpose of Rule 9(b) is to require that a defendant be apprised of the misconduct complained of, so that he can prepare a defense. *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 768 (S.D.N.Y. 1981), *aff'd without opinion*, 697 F.2d 296 (2d.Cir.1982). Although the rule provides that intent and knowledge may be averred generally, a plaintiff must still provide some factual basis for conclusory allegations of intent or knowledge. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d.Cir.1987) *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). These allegations must lead to a strong inference that the defendant intended to defraud the plaintiff. *Id.* Hutton's amended complaint does not lead to such an inference.

The gist of Hutton's fraud claim is that Klabal misrepresented the future value of the etchings, and never intended to deliver

the etchings to Hutton or to resell them in one year.

■ Generally a cause of action for fraud "cannot be based upon a statement of future intentions, promises or expectations which were speculative or an expression of hope at the time when made, rather than an assumption of fact." *Roney*, 430 N.Y.S.2d at 335. An opinion given with respect to anticipated profits, however, constitutes a representation that the opinion is honestly held, and the declaration of an opinion not honestly held may be found by a jury to be fraudulent. *United States v. Amrep Corp.*, 560 F.2d 539 (2d.Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978). Thus if Hutton is able to show that Klabal did not believe that the etchings would double in value her cause of action would be viable. Likewise, if Hutton can show that Klabal had no intention of delivering or reselling the etchings, her cause of action would be viable.

■ At this stage, it is necessary for Hutton to plead the facts which give rise to an inference that Klabal was misrepresenting his opinions or intent. Such an inference may not be drawn solely from the facts that the projected rise in value did not occur, that delivery did not take place, and that there was no resale. *Roney v. Janis*, 77 A.D.2d 555, 430 N.Y.S.2d 333, 335 (1st Dep't 1980), *aff'd* 53 N.Y.2d 1025, 442 N.Y. S.2d 484, 425 N.E.2d 872 (1981).

■ Hutton's allegations are founded on "information and belief," and she pleads no facts or events to support her claim that Klabal and KGI intended to defraud her. The general rule is that allegations of fraud may not be based on "information and belief." *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d.Cir.1987), *Segal v. Gordon*, 467 F.2d 602, 608 (2d.Cir.1972). An exception exists for matters that are peculiarly within the defendant's knowledge, provided that the allegations are accompanied by a statement of the facts upon which the information and belief are founded. *Id.*

■ Klabal's state of mind is, of course, peculiarly within his knowledge. But Hutton does not provide any facts as to the source of her information and belief as to his state of mind. Hutton does not even allege that the etchings did not double in value. She relies on vague allegations made by others that the defendants have defrauded them. Whether or not other people have sued Klabal and KGI for fraud is irrelevant to the sufficiency of Hutton's complaint. *See Equitable Life Assurance Soc. v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1029 (S.D.N.Y.1985).

■ Claims dismissed under Rule 9(b) are generally dismissed with leave to amend. *Luce v. Edelstein*, 802 F.2d 49, 56 (2d.Cir.1986). In the present case, however, plaintiff has had two opportunities to plead properly. At this point, in fairness to the defendants, the case should proceed.

The fraud claim is therefore dismissed without leave to amend.

## B. RICO

■ The Second Circuit has fashioned a checklist for private civil RICO claims. A plaintiff must allege existence of seven constituent elements: (1) that the defendant, (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity, (5) has directly or indirectly invested in or maintained an interest in or participated in (6) an enterprise, (7) the activities of which affect interstate commerce. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d.Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

■ Hutton's complaint fails with respect to three of the elements: (2) the commission of two or more acts (3) constituting a pattern (4) of racketeering activity. She does allege that telephone calls and letters transmitted in the course of her ongoing dealings with Klabal constitute wire fraud and mail fraud which form a pattern of racketeering activity. But her attempts to plead fraud in connection with her RICO claim are as ineffective as those attempts in connection with her fraud claim. Since the racketeering acts she alleges sound in fraud, and that fraud has

not been adequately pleaded, she has not adequately pleaded the requisite acts constituting a pattern of racketeering activity. She has, therefore, failed to state a RICO claim.

One of the goals of Rule 9(b)—one reason it requires specificity—is to insure that the defendant receives fair notice of plaintiff's claim, and is thus able to prepare a defense. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d.Cir.1987). This is the purpose of the requirement that fraud allegations specify the time, place, speaker and content of alleged misrepresentations. *Id.*

Hutton has not provided these details. In paragraph 26 of her amended complaint Hutton asserts that "In December 1983 and into 1986" Klabal and KGI made fraudulent representations "by mail and telephone." Nowhere in the complaint, however, does Hutton specifically indicate which telephone calls or which letters constitute acts of wire fraud or mail fraud. A defendant cannot prepare a defense unless he knows which of his acts are charged to be unlawful.

The RICO claim is dismissed for failure to state a claim upon which relief can be granted. As with the fraud claim, leave to amend is denied.

### C. Conversion

Plaintiff next claims that Klabal has effected a conversion. In the amended complaint, Hutton specifically alleges that Klabal has converted the money paid to Klabal for the etchings. In her brief, Hutton says that the conversion applies to the undelivered etchings.

■ "Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't, 1982). Money can be the subject of a conversion action if it is specifically identifiable. *Id.* An action for conversion, however, cannot be maintained where damages are merely sought for a breach of contract. *Id.* To sustain a conversion

claim, Hutton must allege acts that are unlawful or wrongful, as distinguished from acts that are a mere violation of contractual rights. *Fraser v. Doubleday & Co. Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984).

■ Hutton's amended complaint specifies that Klabal and KGI converted *money*, not etchings. The money which Hutton paid to Klabal is not specifically identifiable; therefore no conversion action can be sustained for it. Only in her reply brief does Hutton assert that etchings have been converted. Notwithstanding this defect in the complaint, Hutton has never had possession or control of the undelivered etchings. Further, it has not been clearly established that Hutton ever actually acquired ownership of the etchings.

Nonetheless, viewing the pleadings in a light most favorable to Hutton, she may have made out a claim for conversion. Klabal allegedly showed Hutton a Martipol Suite that he said belonged to her. He said he was going to have the etchings framed in gold for her. Hutton has never received these etchings. The implication is that Klabal has retained possession and control of etchings belonging to Hutton. This is the essence of a conversion claim.

Since, however, the amended complaint does not allege conversion of etchings, the motion to dismiss the conversion claim is granted, with leave to replead within 30 days.

### D. Unjust Enrichment

■ In order to recover for unjust enrichment under New York law a plaintiff must show that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 655 F.Supp. 346, 353 (S.D.N.Y.1987).

■ Hutton has stated a sufficient claim here. She has alleged that payment was made to Klabal and KGI and that she has received little, if any, benefit for her money: Klabal has retained her money and most of the etchings.

The motion to dismiss the unjust enrichment claim is denied.

### E. Constructive Trust

██ A constructive trust may be established if the following four elements are satisfied: (1) the existence of a confidential or fiduciary relationship, (2) the making of a promise, (3) a transfer in reliance on the promise, (4) unjust enrichment. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 386 N.Y.S.2d 72, 75, 351 N.E.2d 721, 723–724 (1976).

██ In the the present case there is no confidential or fiduciary relationship. Hutton has asserted that Klabal's superior knowledge of art and his representation to her that he is an expert in art as an investment created, between them, a fiduciary relationship. An expert does not, however, solely by virtue of his expertise, have fiduciary responsibility toward his customers. *Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1431 (S.D.N.Y.1985). The amended complaint does not allege prior dealings between Hutton and Klabal which might create a relationship of trust and confidence.

The constructive trust cause of action is dismissed.

### F. Injunction

██ Hutton seeks to enjoin Klabal from selling, transferring or pledging the etchings or from using the money received for the etchings.

An injunction will only issue upon a showing of irreparable injury. *Nina Ricci, S.A.R.L. v. Gemcraft, Ltd.*, 612 F.Supp. 1520 (S.D.N.Y.1985). If plaintiff has an adequate remedy at law, the injury is not irreparable, and generally injunctive relief is not appropriate. *Sapienza v. New York News, Inc.*, 481 F.Supp. 671, 675 (S.D.N.Y. 1979). Thus where a plaintiff can be adequately compensated in damages, an injunction should not be granted. *Id.*

The essence of Hutton's complaint is that Klabal failed to obtain the etchings for her and failed to re-sell them, depriving her of $156,000. A damages award would be an appropriate and available remedy.

Hutton's claim for an injunction is dismissed.

### G. Punitive Damages

Plaintiff has asked for punitive damages with respect to her claims sounding in breach of agreement, unjust enrichment, fraud, and conversion. I have already dismissed Hutton's fraud claim and therefore only address the issue of punitive damages for breach of agreement, unjust enrichment and conversion.

#### 1. Breach of Agreement

██ Under New York law, punitive damages cannot be awarded in breach of contract cases which involve private wrongs and where no public rights are involved. *Durham Industries, Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d.Cir.), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982); *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y. S.2d 831, 833, 353 N.E.2d 793, 795–796 (1976). Punitive damages are allowed where there is fraud upon the general public, involving a high degree of moral culpability. *Garrity*, 386 N.Y.S.2d at 833, 353 N.E.2d at 795–796. Hutton has essentially alleged a breach of contract, a private wrong. Although the amended complaint asserts that Klabal practiced a scam on other individuals, it alleges no facts to support the assertion. The complaint does not allege activities which infringe upon public rights.

#### 2. Unjust Enrichment

██ Unjust enrichment is an equitable claim. The remedy in such an action is intended to restore to the plaintiff any benefit unjustly conferred on the defendant. This usually involves the return of money or property. *See Dolmetta v. Uintah National Corp.*, 712 F.2d 15, 20 (2d.Cir.1983). Punitive damages are inappropriate with respect to a claim of unjust enrichment.

#### 3. Conversion

Punitive damages may in certain circumstances be awarded for conversion, if the conversion was accomplished "with malice or reckless disregard of plaintiffs' rights...." See: *Fraser v. Doubleday &*

*Co., Inc.,* 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984).

The motion to strike the prayer for punitive damages is granted with respect to the stricken fraud claim, the breach of agreement claim, and the unjust enrichment claim. If a viable conversion claim is ultimately pleaded, the availability of punitive damages with respect to that claim will be reviewed.

### III.

Summarizing the dispositions made in this Memorandum Order:

1. The first claim of the amended complaint, which alleges violation of RICO, is dismissed without leave to replead.

2. The third claim of the amended complaint, which alleges fraud, is dismissed without leave to replead.

3. The fourth claim of the amended complaint, which alleges conversion, is dismissed, with leave to replead within 30 days.

4. The sixth claim of the amended complaint, which alleges a constructive trust, is dismissed without leave to replead.

5. The seventh claim of the amended complaint, which seeks an injunction, is dismissed without leave to replead.

6. The prayer for punitive damages on page 23 of the amended complaint is stricken.[1]

A conference will be held in the White Plains courthouse on October 27, 1989 at 10:30 A.M. to chart the future course of this case.

SO ORDERED.

---

**1.** If an appropriate conversion count is repleaded, punitive damages may be sought with respect to that count if there is an appropriate allegation of malice or reckless disregard of plaintiff's rights.