UNITED STATES of America, Plaintiff,

v.

VILLAGE OF NEW HEMPSTEAD, NEW YORK, a Municipal Corporation of the County of Rockland and State of New York; Lawrence Dessau, in his official capacity as Mayor of the Village of New Hempstead; Robert Moskowitz, Bruce Stetson, Paul Mundt and Steve Binder, in their official capacities as members of the Board of Trustees of the Village of New Hempstead; William Moriarity, in his official capacity as Code Inspector of the Village of New Hempstead; and Rockland Community Action Council, Inc., a private not-for-profit corporation, Defendants.

No. 92 CV 2592 (KMW).

United States District Court,
S.D. New York.

Aug. 27, 1993.

Joseph W. Lobue, Dept. of Justice, Washington, DC, for plaintiff.

Doris F. Ulman, Village Atty., Village of New Hempstead, Suffern, NY, for defendant Village of New Hempstead.

Theodore R. Snyder, Cynthia Matthews, White & Case, New York City, for defendant Rockland Community Action Council.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

The United States and defendant Rockland Community Action Council, Inc. ("ROCAC") move respectively for summary judgment and partial summary judgment in this action arising from ROCAC's attempt to comply with its lease to settle homeless families on unutilized property belonging to the United States Department of the Army ("the Army"). The Army leased the property to ROCAC pursuant to the Stewart B. McKinney Homeless Assistance Act of 1987 ("the McKinney Act," or "the Act"), 42 U.S.C. § 11411, *et seq.*, which requires federal agencies to make surplus, federal government property available to provide housing to the homeless. Although ROCAC is a nominal defendant in the action, both it and the United States seek the same relief: a declaration that the McKinney Act and its implementing regulations have preempted zoning ordinances of the Village of New Hempstead ("the Village") and an injunction preventing the Village from interfering with ROCAC's efforts to settle families on the property in accordance with its lease. For the reasons discussed below, I grant the motions.

### BACKGROUND

The McKinney Act reflects Congress' belief that "the Nation faces an immediate and unprecedented crisis due to the lack of shelter for a growing number of individuals and families," and that "in the absence of more effective efforts, [the problem of homelessness] is expected to become dramatically worse." 42 U.S.C. § 11301(a). As part of the McKinney Act's program to combat the problem of homelessness, Subchapter V, 42 U.S.C. §§ 11411–12, requires federal agencies to make surplus and underutilized federal property available to lease to organizations wishing to provide housing for homeless persons. Underscoring Congress' sense of the importance of providing such housing, the Act directs those disposing of excess federal property to "give priority of consideration to uses to assist the homeless," unless they "determine[ ] that a competing request for the property ... is so meritorious and compelling as to outweigh the needs of the homeless." 42 U.S.C. § 11411(f)(3)(A). To act on this directive, the agencies charged with implementing this subchapter of the McKinney Act promulgated regulations, the most important of which, for the purposes of this

action, is found at 45 C.F.R. § 12a.9(b)(10). That regulation ("the Regulation") states that a Subchapter V lessee "is not required to comply with local zoning requirements," although the lessee is required to "comply with all local use restrictions, including local building code requirements."

Taking advantage of the availability of surplus federal property in its area, ROCAC entered into a lease with the Army to use a five acre parcel of land located in the Village of New Hempstead and known as "the Spring Valley Property." The Spring Valley Property contains twelve pre-existing single family homes, into which ROCAC intends to place homeless families.

Soon after the lease was executed, however, the Village filed an action in New York State Supreme Court against ROCAC and against the families ROCAC had moved onto the Spring Valley property.[1] *Village of New Hempstead v. Rockland County Community Action Council,* Index No. 7781/91 (Sup.Ct. Rockland Cty). The action alleged, among other things, that (1) ROCAC's corporate charter did not authorize it to provide housing; (2) ROCAC's use of the property to house twelve families violates Village zoning ordinances and restrictions; (3) ROCAC failed to comply with federal regulations implementing the McKinney Act; and (4) the families occupying the Spring Valley property were trespassing on the property. The New York court entered a preliminary injunction, prohibiting ROCAC and all persons acting in concert with it "from occupying, taking possession of, managing, operating or in any way exercising control" over the Spring Valley property and "from implementing, carrying out or exercising any rights or obligations" arising from ROCAC's lease with the Army. *See* Exhibit I to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Plaintiff's 3(g) Statement").

The Village's Code Inspector subsequently issued "appearance tickets" directing RO-CAC to answer charges that it was violating local zoning restrictions by housing families at the Spring Valley Property. The appearance tickets cited ROCAC for, among other things, maintaining a multi-family development in an area not zoned for such a use and changing the property from use as a military reservation to use as a multi-family homeless housing development without obtaining prior site plan approval.[2] Exhibit J to Plaintiff's 3(g) Statement. The Village also moved to hold ROCAC in contempt for failing to comply with the preliminary injunction.

The United States then filed this action against the Village, specified Village officials, and ROCAC. As mentioned, although RO-CAC is named as a defendant in the action, all parties acknowledge that ROCAC's interests coincide with those of the United States, and ROCAC has filed cross-claims against the Village defendants seeking relief similar to that sought in the United States' complaint. Shortly after the filing of this action, the New York Supreme Court dismissed the Village's state court action for failure to join a necessary party (the United States) and in deference to this action. *Village of New Hempstead v. Rockland Community Action Council, supra* (slip op. Dec. 3, 1992).

Currently before this Court are (1) the United States' motion for summary judgment, and (2) ROCAC's motion for partial summary judgment on (a) its cross-claims against the Village defendants, and (b) the Village defendants' cross-claim against it. The United States and ROCAC argue that the Regulation preempts the local zoning laws the Village currently seeks to enforce, that the United States and ROCAC's lease are in full compliance with the McKinney Act, and that the Village has no standing to claim either that ROCAC is exceeding its corporate authority or that it is violating its

---

1. It appears that at the time the Village filed its state action, ROCAC had moved two families onto the property and that eight additional units became occupied during the pendency of the state action. *See* Defendant Village of New Hempstead's Statement of Material Facts to Be Tried ¶ 8.

2. The Village did not defend this latter citation to this Court, apparently because the ordinance requiring prior site plan approval (Section 10.1.1 of Local Law No. 11 of 1984) explicitly excepts single family detached dwellings from its scope.

lease with the United States. I will address each of this arguments in turn.

## DISCUSSION

### A. Whether 45 C.F.R. § 12a.9(b)(10) Preempts Localities From Enforcing Zoning Ordinances Against Subchapter V Lessees

■ As mentioned, the agencies charged with implementing the McKinney Act promulgated the Regulation, which purported to preempt local zoning laws like those the Village seeks to enforce against ROCAC. In *New York v. Federal Communications Commission*, 486 U.S. 57, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988), the United States Supreme Court reiterated its view that "a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law." *Id.* at 63–64, 108 S.Ct. at 1642 (citation and internal quotation marks omitted). In determining whether a particular act of regulatory preemption is permissible, the Supreme Court explained, courts should not focus exclusively on whether Congress expressly intended to preempt state law. Instead:

the Court has cautioned that even in the area of preemption, if the agency's choice to pre-empt "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

*Id.*, quoting *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961).

With regard to the Regulation at issue in this action, the explicit language and goals of the McKinney Act make it impossible for me to conclude that "the accommodation is not one that Congress would have sanctioned." Not only did Congress codify in the McKinney Act its general view that the nation faces "an immediate and unprecedented crisis" in housing and that "the Federal Government has a clear responsibility and an existing capacity to fulfill a more effective and responsible role" to solve this crisis, 42 U.S.C. § 11301(a), but Congress also specifically directed that, in disposing of surplus federal property, the government "shall give priority of consideration to uses to assist the homeless, unless [it] determines that a competing request for the property ... is *so meritorious and compelling* as to outweigh the needs of the homeless," 42 U.S.C. § 11411(f)(3)(A) (emphasis added).

These statutory directives strongly suggest that the implementing agencies' decision to exempt this use of federal property from local zoning ordinances is an accommodation that Congress would sanction. After all, Congress clearly directed the agencies to maximize the use of excess and surplus, federal government property for housing the homeless. As the Spring Valley Property well demonstrates, however, this Congressional directive would often be subverted if housing providers on surplus, federal property had to comply with local zoning ordinances. For example, requiring ROCAC to comply with the Village's minimum lot size ordinance would leave approximately half of the existing homes on the Spring Valley property perpetually vacant. Surely the agencies' decision to preclude such underutilization of existing structures is an accommodation Congress would have sanctioned.

■ The Village argues, however, that the McKinney Act evinces a Congressional intent to comply with, and not to preempt, local law and that Congress consequently would not sanction this act of regulatory preemption. In support of its argument, the Village makes unsubstantiated claims about the Act's directives and cites irrelevant and inapplicable portions of the Act. For example, to demonstrate that the Act intends housing providers to comply with local law, the Village cites a requirement for certain grantees under the Act to certify that they are complying with the relevant locality's Homeless Assistance Plan. The section of the McKinney Act cited for this alleged requirement, however, explicitly requires such certification only for assistance provided under Subchapter IV of the Act—not Subchapter V, the subchapter governing the excess and surplus

federal property at issue here. The Village seeks to circumvent this problem by arguing, without citation, that Subchapter V of the McKinney Act "is procedural only," that it thus does not affect the McKinney Act's general intent to comply with local law, and that any application for assistance under Subchapter V therefore must comply with Subchapter IV's requirements. Memorandum in Opposition to Summary Judgment at 4, 11–13. This reading of Subchapter IV's requirements into Subchapter V is unequivocally belied by Subchapter IV's explicit language that its requirements apply only to Subchapter IV programs. In light of Subchapter V's substantive directive that the government, in disposing of excess and surplus property, give priority to making that property available to the homeless, there is no reason to credit the Village's interpretation of Subchapter V as procedural only, particularly where there is no support for that interpretation in the Act or in its legislative history. Moreover, the agencies charged with implementing this subchapter have shown by their actions that they view Subchapter V as more than procedural, and I find that interpretation to be a reasonable one, and probably a required one.

In short, the Regulation preempting local zoning laws is a reasonable exercise of the promulgating agencies' authority under the Act. As such, the Regulation preempts the Village's zoning requirements, and the Village may not enforce those ordinances against ROCAC.[3]

## B. Whether the Village Has Any Other Ground on Which to Challenge the Lease Between ROCAC and the Army

The Village next argues that even if the Regulation is a valid exercise of the implementing agencies' regulatory power in general, it does not save the lease between ROCAC and the Army from the Village's en-

forcement power for three reasons. The Village argues first, that ROCAC did not follow specified federal regulations prior to entering into the lease, second, that ROCAC does not have the corporate authority to run housing for the homeless, and third, that ROCAC is not housing truly homeless persons on the Spring Valley Property. None of these arguments has merit.

### 1. *Whether the United States and RO-CAC failed to comply with regulations implementing the McKinney Act*

■ The Village argues that ROCAC failed to comply with federal regulations implementing the McKinney Act. *See* Memorandum in Opposition at 12. In light of the statute's delegation of Subchapter V of McKinney Act's enforcement and administrative authority to specified federal agencies, it is doubtful that the Village has standing to assert this claim. However, assuming, *arguendo*, that the Village may assert this claim, it is baseless. As suggested above, some of the alleged requirements the Village cites do not apply to Subchapter V programs. *See* 42 U.S.C. § 11361 (requirements apply only to grantees under Subchapter IV), § 11375 (requirements apply only to recipients under Subchapter IV, Part B). Moreover, to the extent that the Village still presses its argument that ROCAC failed to comply with the requirement in 45 C.F.R. § 12a.9(b)(9) to notify the Village of its proposed programs prior to submitting its application, that argument too is misplaced, because that regulation did not take effect until *after* ROCAC submitted, and the Department of Health and Human Services approved, ROCAC's application.

### 2. *Whether the Village may challenge ROCAC's authority to provide housing*

■ The Village also challenges the lease between ROCAC and the Army on the

---

3. I note that the Village argues that even if the Regulation is valid, the fact that the Regulation took effect after ROCAC applied for a lease on the Spring Valley property precludes using the Regulation to shield ROCAC from the Village's zoning ordinances. The Village fails to note, however, that regardless of when ROCAC *applied* for a lease, ROCAC *entered into* the lease with the Army *after* the Regulation's effective date. In any event, the question before me is whether the

Village may enforce its zoning requirements *today*, not whether it could have enforced its zoning requirements prior to the Regulation's effective date. The Village may not enforce its zoning requirements today, because the Regulation is clear in its intent that localities may not enforce zoning ordinances against lessees presently holding leases under Subchapter V of the McKinney Act.

ground that ROCAC's Certificate of Incorporation allegedly does not confer upon it the authority to own or lease property in order to provide housing. Although ROCAC's Certificate of Incorporation originally did not explicitly give ROCAC such authority, RO-CAC has since amended that Certificate to make clear its authority to administer the Spring Valley Property. *See* Exhibit 1 to ROCAC's Notice of Motion. Even if that were not the case, New York law is clear that the Village has no standing to challenge RO-CAC's alleged lack of authority under RO-CAC's corporate charter. *See Pellegrini v. Rockland Community Action Council, Inc.,* 593 N.Y.S.2d 131, 133 (3d Dep't 1993).

3. *Whether the Village may challenge the lease on the ground that the families occupying the Spring Valley Property are not truly homeless*

■ Finally, the Village argues that it may set aside ROCAC's lease because ROCAC is not housing persons who are truly homeless, as the McKinney Act requires. The Village argues that ROCAC's alleged failure to house homeless persons renders the Regulation useless to save ROCAC's lease, because that lease is not being used to further the only purpose for which McKinney Act preemption is permissible—to aid the homeless.

■ This argument too must fail, because the Village does not have standing to raise it. The lease itself does comply with the McKinney Act; it requires ROCAC to house only homeless persons on the Spring Valley Property. Thus, the Village's argument really amounts to a claim that ROCAC is violating its lease with the United States—a lease to which the Village is not a party. A nonparty normally lacks standing to challenge noncompliance with a lawful lease. In this case, the Village's apparent lack of standing is aggravated by the fact that the McKinney Act delegates exclusively to federal agencies— not to local governments—authority to enforce and administer leases entered into pur-

suant to Subchapter V. Despite these problems, the Village has cited no authority that would give it standing to challenge ROCAC's alleged breach. Nor has the Court found any such authority. The Court therefore concludes that the Village lacks standing to challenge ROCAC's alleged noncompliance with the lease.[4]

**C. Whether the Village may raise a trespass claim against the residents of the Spring Valley Property**

■ The United States and ROCAC seek a declaration that the Village may not claim, as it attempted to in the state court action, that the tenants of the Spring Valley Property are trespassing. I agree that the Village may not pursue such a claim, because the Village has neither title to nor possession of the Spring Valley Property. *See, e.g., Sky Four Realty Co. v. New York,* 134 Misc.2d 810, 512 N.Y.S.2d 987, 989 (Ct.Claims 1987) ("Restating what would appear to be most obvious, an action for trespass may be brought by a person in exclusive legal possession at the time of the trespass").

**D. Whether the Village can state a claim for unjust enrichment**

■ Finally, ROCAC seeks summary judgment on the Village's cross-claim against ROCAC for unjust enrichment. The Village claims that ROCAC is in violation of its lease with the Army, because the tenants of the Spring Valley Property are not really homeless as required by the lease. Consequently, the Village reasons, ROCAC is being unjustly enriched at the expense of the United States and the Village. As ROCAC points out, however, a claim for unjust enrichment requires a showing that the defendant was unjustly enriched *at the claimant's expense. See Hutton v. Klabal,* 726 F.Supp. 67, 72 (S.D.N.Y.1989). The Village's only basis for asserting that ROCAC's alleged enrichment is at the Village's expense is the Village's claim that, because the United States might otherwise sell the Spring Valley Property to

4. Prior to leaving this argument, the Court must note that it questions whether the Village made this argument in good faith. If this argument were successful, the appropriate relief would be to require ROCAC to comply with its lease and to house homeless persons at the Spring Valley Property. The Village, however, does not re-

quest such relief; it instead asks this Court to declare the lease itself void and to prevent RO-CAC from exercising any control over the Spring Valley Property. *See* "Wherefore" Clause, Answer and Counterclaim of Village of New Hempstead.

a potential taxpayer, "local taxpayers are being deprived of a real estate tax ratable that could provide substantial revenue." Village's Answer and Counter Claim ¶ 16. I agree with ROCAC that this alleged injury is too speculative and hypothetical to credit, particularly in light of the fact that, even if the United States voided ROCAC's lease for failure to comply with its terms, the McKinney Act would still require the United States to give priority to using the property to provide housing for the homeless, which renders the property's sale and consequent tax revenues for the Village highly speculative.

### CONCLUSION

For the reasons stated above, the United States' motion for summary judgment is hereby granted to the United States on Count I [5] of the Complaint. ROCAC's motion for partial summary judgment is also granted on the following Counts: (1) On ROCAC's Third Cross–Claim, the Village has no standing to challenge ROCAC's authority under its Certificate of Incorporation; (2) On ROCAC's Fourth Cross–Claim, the cited federal regulation preempts local zoning ordinances and ROCAC consequently may not enforce those zoning ordinances against RO-CAC's use of the Spring Valley Property under the lease; (3) on ROCAC's Fifth Cross–Claim, ROCAC has not violated any federal regulation cited to the Court by the Village; (4) on ROCAC's Sixth Cross–Claim, the Village may not assert a trespass claim against the tenants of the Spring Valley property; and (5) on the Village's Cross–Claim against ROCAC, the Village has not stated a claim for unjust enrichment, because the Village has not stated any facts to show that ROCAC was enriched at the Village's expense. The parties are directed to consult with each other and to submit to the Court by September 10, 1993 a proposed scheduling order for resolving any remaining issues in the action.

SO ORDERED.

---

**5.** Because the Court grants the United States all of the relief requested on the basis of Count I, the Court does not address the Complaint's alternative ground for relief set forth in Count II.