822 F.2d 1242
 Fed. Sec. L. Rep. P 93,300, 8 Fed.R.Serv.3d 421,
RICO Bus.Disp.Guide 6683
 Vincent DiVITTORIO, Individually, and as Representative of a
Class of Investors Who Purchased the Securities of Equidyne
Extractive Industries 1979 Petro/Coal Program II, and also
Derivatively on behalf of the Aforesaid Partnership,
Plaintiff-Appellant,
v.
EQUIDYNE EXTRACTIVE INDUSTRIES, INC.; Eastern Mining
Systems, Inc.; Eastland Drilling Corp.; Eastland
Industries, Inc.; Equidyne Corporation; Equidyne
Properties, Inc.; Stuart R. Ross; Joel I. Beeler; Peter
P.R. Rock; Robert L. Liebmann; Wofsey Certilman Haft and
Lebow; Marks Shron and Company; Arnold Gruber,
Individually and as a partner of Marks Shron and Company;
Inland Drilling Company, Inc.; and Equidyne Extractive
Industries 1979 Petro/Coal Program II, Defendants-Appellees.
 No. 504, Docket 86-7771.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 12, 1986.
Decided June 26, 1987.
 
 Curtis V. Trinko, New York City (Kevin J. Yourman, of counsel), for plaintiff-appellant.
 Geoffrey W. Heineman, New York City (D'Amato & Lynch, New York City, of counsel), for defendant-appellee Wofsey Certilman Haft and Lebow.
 Carolyn H. Henneman, New York City (Scoppetta & Seiff, New York City, of counsel), for defendant-appellee Joel I. Beeler.
 Andrew J. Entwistle, New York City (Vincent R. Fontana, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, of counsel), for defendants-appellees Marks Shron and Co. and Arnold Gruber.
 Stuart A. Jackson, New York City, for defendants-appellees Equidyne Extractive Industries, Inc., Eastern Mining Systems, Inc., Eastland Drilling Corp., Eastland Industries, Inc., Equidyne Corporation, Equidyne Properties, Inc., Stuart R. Ross, Peter P.R. Rock, and Equidyne Extractive Industries 1979 Petro/Coal Program II.
 Daniel J. Kornstein, New York City (Kornstein Veisz & Wexler, New York City, of counsel), for defendant-appellee Inland Drilling, Co.
 Before MANSFIELD,* VAN GRAAFEILAND and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 In this action, plaintiff Vincent DiVittorio complains of an alleged fraud in the public solicitation of purchasers of interests in defendant Equidyne Extractive Industries 1979 Petro/Coal Program II, a New York limited partnership (the "Partnership") formed to obtain and exploit various coal properties and oil leases. DiVittorio, suing individually and on behalf of a class of investors, filed an amended complaint on or about January 10, 1986. He alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78j(b) (1982)) and Rule 10b-5 promulgated thereunder (17 C.F.R. Sec. 240.10b-5 (1986)); Section 17 of the Securities Act of 1933 (15 U.S.C. Sec. 77q (1982)); and Section 1962 of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. Sec. 1962 (1982)). Various pendent claims were also asserted, including breach of fiduciary duties, fraudulent misrepresentation, negligence, and legal and accounting malpractice.
 
 
 2
 All of the defendants thereafter either made or joined in motions to dismiss the amended complaint. In a memorandum and order dated August 18, 1986, the district court dismissed the complaint for failure to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). Plaintiff was given leave to replead within sixty days. This appeal followed. We affirm in part, and reverse and remand in part.
 
 I. BACKGROUND
 
 3
 We assume the truth of the plaintiff's allegations. Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir.1986).
 
 
 4
 A. The Defendants.
 
 
 5
 Plaintiff has divided all but one of the various defendants into three groups, and we shall do the same for ease of reference. The "Equidyne defendants" are:
 
 
 6
 (1) the Partnership;
 
 
 7
 (2) Equidyne Extractive Industries, Inc. (the "General Partner"), a New York corporation serving as general partner in the Partnership;
 
 
 8
 (3) Eastern Mining Systems, Inc. ("Eastern"), a New York corporation affiliated with the General Partner and the contract miner for the Partnership's coal properties;
 
 
 9
 (4) Eastland Drilling Corp. ("EDC"), an affiliate of the General Partner and a co-contracting driller under an agreement for the development of the Partnership's oil and gas properties;
 
 
 10
 (5) Eastland Industries, Inc. ("Eastland"), an affiliate of the General Partner that sublet coal properties to the Partnership;
 
 
 11
 (6) Equidyne Corporation ("Equidyne"), a New York corporation and the parent of the General Partner;
 
 
 12
 (7) Equidyne Properties, Inc. ("Properties"), a New York corporation and subsidiary of Equidyne serving as a manager and syndicator of Equidyne's real estate investments;
 
 
 13
 (8) Stuart R. Ross, a controlling stockholder and president of Equidyne, president of the General Partner and secretary-treasurer and a director of Properties;
 
 
 14
 (9) Joel I. Beeler, president or former president and a director of Properties, and present or former secretary-treasurer and a director of Equidyne;
 
 
 15
 (10) Peter P.R. Rock, vice president of the General Partner; and
 
 
 16
 (11) Robert L. Liebmann, formerly vice president-finance of the General Partner.
 
 
 17
 The "Lawyer defendant" is Wofsey Certilman Haft and Lebow ("Wofsey"), a law firm which, at all relevant times, acted as general counsel, tax counsel and business advisor to the Partnership.
 
 The "Accountant defendants" are:
 
 18
 (1) Marks Shron and Company ("Marks Shron"), an accounting firm; and
 
 
 19
 (2) Arnold Gruber, a general partner in Marks Shron.
 
 
 20
 Defendant Inland Drilling Company, Inc. ("Inland") is an Ohio corporation which is wholly owned by the Buckeye Petroleum Company, Inc., which is not named as a defendant herein. Inland, along with EDC, is a co-contracting driller under an agreement for the development of the Partnership's oil and gas properties.
 
 
 21
 B. The Alleged Fraudulent Scheme.
 
 
 22
 According to the complaint, pleaded, except as to the identity of the class/derivative plaintiff, entirely upon information and belief, the Partnership was formed to acquire and exploit various coal properties and oil leases, and to provide, inter alia, "positive economic benefits" to its limited partners through the sale of oil, gas and coal, as well as certain tax benefits, such as deductions for intangible drilling costs and depreciation allowances on equipment. Pursuant to a "Descriptive Offering Memorandum" ("Memorandum") dated November 26, 1979, the Partnership solicited limited partners, ostensibly to facilitate the purchase of mining and other equipment for use in the Partnership's operations. DiVittorio invested in the Partnership some time during the latter half of 1979, although the precise circumstances surrounding his purchase are not disclosed in the complaint. From that time through and including at least July, 1983, defendants allegedly defrauded plaintiff by means of material misrepresentations and omissions in certain documents, including: (1) the Memorandum; (2) the "Limited Partnership Agreement of Equidyne Extractive Industries 1979 Petro/Coal Program II" dated December 3, 1979; and (3) "[v]arious reports and correspondence transmitted by the General Partner to the plaintiff and other investors in the Partnership subsequent to November, 1979."
 
 
 23
 Plaintiff alleges that the defendants failed to reveal that they had no intention of developing the Partnership's coal reserves. Plaintiff attempts to support this allegation by pointing to a statement, found elsewhere in the Memorandum, that the General Partner had suspended coal mining operations in another of its ventures due to poor market conditions. Further, it is alleged that mining equipment was never purchased and/or delivered to the Partnership, and that the defendants never intended to acquire such equipment.
 
 
 24
 The Memorandum acknowledged that the General Partner stood in a fiduciary relationship to the limited partners such as DiVittorio. The General Partner "stated its intention" of "exercis[ing] integrity and good faith in dealings with respect to Partnership affairs." The Memorandum also advised investors that the General Partner and its affiliates were involved in other business ventures, in which the limited partners would enjoy no rights. DiVittorio claims these statements constituted material misstatements of facts, because the defendants--and, as is often the case throughout the amended complaint, plaintiff fails to assign specific roles to any of the defendant groups or individual defendants--did not maintain separate business structures or segregated finances for the various businesses they managed. Plaintiff also alleges that defendants diverted funds contributed by investors to the Partnership, and monies generated by the Partnership's oil and gas properties, to other businesses controlled by defendants to bail those businesses out of financial difficulties.
 
 
 25
 The Memorandum referred to a "Put Option," a right given investors under the limited partnership agreement. Exercise of the option would have allowed a limited partner to sell his interest in the Partnership's oil and gas venture to the General Partner; the availability of the option was conditioned upon the failure of the oil and gas properties to yield a certain minimum cash flow prior to a date certain. Any limited partner exercising the option was required to transfer thirty percent of his interest in the Partnership's coal mining venture as consideration for the transaction. DiVittorio claims that the limited partners were never in a position to determine the cash flow attributable to the oil and gas properties, because defendants failed properly to account to the investors respecting the Partnership's financial condition. Thus, defendants allegedly rendered the Put Option worthless, and never had any intention of fulfilling their obligations thereunder.
 
 
 26
 The Memorandum represented that expenditure of funds collected from investors would commence as soon as possible in 1979, and that substantially all of the proceeds would be expended as early as possible in 1980. It is claimed that defendants did not so expend the funds, and never had any intention of doing so.
 
 
 27
 The Memorandum represented that the Partnership would purchase up to three million dollars in mining equipment, which would be delivered no later than December 1, 1981. The purchase was to be effected with promissory notes of the General Partner and the limited partners, on a pro rata basis. The Memorandum informed investors that existing federal tax laws would permit, and the Partnership would incur, deductions based on equipment depreciation. Once again, DiVittorio alleges the foregoing were material misstatements, since defendants had no intention of buying mining equipment, but sought instead to induce investors to contribute monies to defendants which the latter planned to use to rescue other, financially troubled businesses they controlled. Further, defendants allegedly materially misled investors respecting the tax benefits which would accrue to the limited partners, since they knew that mining equipment would not be purchased, the notes given to effect the purchase would be rendered valueless, and the Internal Revenue Service ("IRS") in turn would disallow all depreciation deductions with respect thereto.
 
 
 28
 Representations concerning the coal reserves on the Partnership's property were also made. For example, the Memorandum reported the estimates of one Roy K. Cornelius, a coal mining consultant, to the effect that approximately 9,260,000 tons of coal reserves were in place on the Partnership's properties. The Memorandum also stated that the General Partner intended to retain J.W. Miller Associates to confirm this estimate. Plaintiff contends that the coal reserve reports seriously overestimated the true measure of the reserves in place, and that he "believed" that J.W. Miller Associates was never retained to confirm Cornelius's report.
 
 
 29
 The Memorandum stated that Eastern would mine coal from the Partnership's properties, applying its best efforts to meet a minimum mining commitment of not less than 10,000 tons of merchantable coal per month by the end of the second month after the commencement of mining operations. Eastern represented that it had sufficient resources at its disposal to fulfill its obligations. DiVittorio claims these representations were materially misleading, since defendants did not intend to mine the Partnership's coal properties; he further alleges that Eastern did not have sufficient resources to perform its obligations.
 
 
 30
 The Memorandum stated that the Partnership would furnish the limited partners with all necessary tax information, as well as annual balance sheets, audited statements of the Partnership's income and expenses, and so forth. The Memorandum also asserted that limited partners would be permitted full access to the Partnership's books and records. DiVittorio claims these statements were false and misleading, since defendants never intended to provide the above-described financial information to investors, "and in fact, stifled all written and oral communications" made by investors seeking this data. Since 1982, the Partnership has failed to furnish the limited partners with any of this information.
 
 
 31
 Plaintiff alleges that all named defendants conspired in the commission of the alleged fraud; that all were aware of it; and that all knowingly aided and abetted its commission. In his prayer for relief, plaintiff sought, inter alia, damages, an order directing an audit of the Partnership and granting plaintiff full access to its books and records, an order directing return to the limited partners of all recourse and non-recourse notes given in connection with their investments, an order directing the defendants to marshal the Partnership's assets under the supervision of the court and the appointment of a receiver and/or trustee, and an order directing the defendants to honor the Put Option if exercised by the limited partners.
 
 
 32
 C. Action by the District Court.
 
 
 33
 The district court dismissed the complaint under Fed.R.Civ.P. 9(b), noting that it failed to ascribe particular roles to each of the defendants herein charged with participating in the allegedly fraudulent scheme. It cited Moss v. Morgan Stanley Inc., 719 F.2d 5, 19 (2d Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); Ross v. A.H. Robins Co., 607 F.2d 545, 557 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); Denny v. Barber, 576 F.2d 465, 470 n. 4 (2d Cir.1978); and Segal v. Gordon, 467 F.2d 602, 606-08 (2d Cir.1972). As noted above, leave to replead was granted; the court's order was entered on August 19, 1986, and this appeal was taken shortly thereafter.
 
 II. DISCUSSION
 
 34
 A. Jurisdiction.
 
 
 35
 Normally, an order dismissing a complaint with leave to amend is interlocutory and not appealable at that time. See 28 U.S.C. Sec. 1291 (1982); Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 960 (2d Cir.1987) (collecting cases). On August 8, 1986, however, at the oral argument on defendants' motions to dismiss, plaintiff's counsel declared his intention to stand on the allegations of his complaint. Although no transcript of the oral argument was made, defendants' counsel uniformly conceded at the oral argument of this appeal that plaintiff's intent was made clear below. Further, plaintiff's counsel sent a letter to Judge Owen dated September 5, 1986 in which he stated that the complaint could not "be pleaded with any greater specificity without the conduct of discovery." At oral argument before this court, counsel for the appellant conceded in open court that an affirmance of the district court's order of dismissal would be dispositive and final.
 
 
 36
 Under these circumstances, we think the nonfinality of the district court's order has been effectively cured, and DiVittorio's appeal is properly before us. See id.; see also Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir.1976). As a necessary corollary, plaintiff has irrevocably waived the option offered by the district court further to amend his complaint, and must stand or fall on the amended complaint presently before us.
 
 
 37
 B. The Merits.
 
 
 38
 We start with some general principles. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Rule 9(b) must be read together, however, with Rule 8(a), which calls for "short and plain statement[s]" of claims for relief. 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298, at 406 (1969).
 
 
 39
 Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits. See Reingold v. Deloitte Haskins & Sells, 599 F.Supp. 1241, 1266 (S.D.N.Y.1984) (citing authorities). Further, Rule 9(b) pleadings cannot be based upon information and belief. Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972). There is a recognized exception to this rule, however, that fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based. See Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir.1986); Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir.1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972); Equitable Life Assur. Soc'y v. Alexander Grant & Co., 627 F.Supp. 1023, 1029 (S.D.N.Y.1985); 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298, at 416 (1969). See also Devaney v. Chester, 813 F.2d 566, 568 (2d Cir.1987); Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 960 (2d Cir.1987).
 
 
 40
 Lastly, fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Luce, 802 F.2d at 54. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. See Natowitz v. Mehlman, 542 F.Supp. 674, 676 (S.D.N.Y.1982). However, "no specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question." Luce, 802 F.2d at 55 (citations omitted).
 
 
 41
 As noted above, DiVittorio's complaint is framed almost entirely upon information and belief, with one irrelevant exception. Further, at least with respect to the federal claims, derelictions are pleaded against the defendants generally, with little or no specification as to individual roles. For the reasons discussed below, we conclude that these defects are not fatal with respect to plaintiff's claims against certain of the Equidyne defendants; with respect to the remaining defendants, however, we hold that the complaint was properly dismissed.
 
 
 42
 1) The Equidyne Defendants.
 
 
 43
 DiVittorio's allegations regarding the Equidyne defendants are framed entirely upon information and belief. We note, however, that where, as here, much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge, the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced. An example is the shareholder derivative action, in which the complaining stockholders know little of the ways in which the corporation's internal affairs are conducted. Schlick, 507 F.2d at 379 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298, at 416 (1969)). That rule has obvious application here.
 
 
 44
 Nevertheless, the pleader still bears the burden of alleging facts upon which his belief is founded. Many of DiVittorio's allegations satisfy this requirement. For example, he claims upon information and belief that defendants misstated the General Partner's intention of observing the high standards required of it as a fiduciary; this belief is supported by allegations that defendants failed to maintain segregated finances for their various ventures and actually siphoned the limited partners' monies into other, financially ailing ventures. Amended Complaint p 40(b). The Memorandum's statement that proceeds of the offering would be expended as quickly as possible for the stated purpose was allegedly false because the proceeds were never so applied and were never intended to be so applied. Amended Complaint p 40(d). The Memorandum's representations regarding anticipated tax benefits allegedly constituted material misstatements and contained material omissions because defendants knew that coal mining equipment would never be purchased with the proceeds of the offering, but sought only to bail out other of their ventures experiencing financial hardship; defendants thus knew that the Internal Revenue Service would disallow all deductions based on the equipment purchase notes tendered by the limited partners. Amended Complaint p 40(e). The Memorandum estimated that the Partnership's properties contained approximately 9,260,000 tons of coal, but they did not in fact contain "nearly" that amount. Amended Complaint p 40(f). We think allegations such as these "are sufficiently pleaded to pass muster under Rule 9(b)." Luce, 802 F.2d at 55 (allegations sufficient under Rule 9(b) where they assert, for example, that although offering memorandum represented that general partners would make capital contributions of $385,000 to partnership, they actually contributed $80,000; and although memorandum represented that cost of renovation project would be $4.5 million, liabilities for incomplete project exceeded $10.2 million at time of appeal).
 
 
 45
 We wish to stress, however, that Luce does not stand for the proposition that mere reliance on an offering memorandum or similar document satisfies a pleader's burden under Rule 9(b); even there, we noted that "many"--and thus not all--claims grounded on the offering memorandum were sufficiently pleaded. Luce, 802 F.2d at 55. We noted that on remand, amendments of Luce's complaint "relating to projections or expectations offered to induce investments [whether or not the representations were contained in the offering memorandum] must allege particular facts demonstrating the knowledge of defendants at the time that such statements were false." Luce, 802 F.2d at 57.
 
 
 46
 We turn next to the application of these principles to specific Equidyne defendants. As noted earlier, Luce, 802 F.2d at 55, does not require a specific connection between insiders or affiliates and fraudulent representations in an offering memorandum. Even with the aid of this rule, however, the amended complaint here is not adequate with respect to most of the Equidyne defendants.
 
 
 47
 The amended complaint identifies Eastern only as an "affiliate of the General Partner, and the Contract Miner for the Partnership's coal properties," p 7; EDC as "an affiliate of the General Partner, and the [sic] co-contracting driller ... for the development of the Partnership's oil properties," p 8; Eastland as "an affiliate of the General Partner, which ... sublet coal properties to the Partnership," p 9; and Properties as "a subsidiary of Equidyne ... [which] serves as a manager and syndicator of Equidyne real estate investments," p 11. These allegations are inadequate to charge these defendants with liability for misrepresentations in the Offering Memorandum.
 
 
 48
 None of the individual Equidyne defendants, Ross, Beeler, Rock and Liebmann, is tied to the Offering Memorandum in any specific way, or even alleged to have been an officer or director of any non-individual Equidyne defendant when the Offering Memorandum was issued or the specified class of plaintiffs bought their limited partnership interests. See Amended Complaint, paragraphs 12-15.
 
 
 49
 Some of these defects might be curable. As stated earlier, however, we have jurisdiction only because plaintiff made an irrevocable election, in the face of leave given below to amend the complaint further, to stand or fall on the amended complaint in its present form. Accordingly that complaint can stand only against the Partnership, the General Partner, and Equidyne.
 
 
 50
 2) The Lawyer Defendant, the Accountant Defendants and Inland.
 
 
 51
 The district court correctly dismissed the complaint under Rule 9(b) as to these defendants. No allegations in the amended complaint are sufficient to describe any of them as insiders or affiliates, and there is no allegation linking any of them in any specific way to any fraudulent misrepresentation or omission.
 
 III. CONCLUSION
 
 52
 The order of the district court dismissing the complaint is affirmed as to all defendants except the Partnership, the General Partner and Equidyne, as to whom we reverse and remand for further proceedings consistent herewith. Plaintiff should be allowed no further opportunity to amend his complaint (except as necessary to conform hereto), in view of his election to stand upon the present amended complaint.
 
 
 
 *
 Judge Mansfield participated in the oral argument of this appeal, and voted prior to his death on January 7, 1987, in favor of the disposition set forth in this opinion