Philip KARASYK, Plaintiff,

v.

**MARC COMMODITIES CORP., Defendant.**

**No. 90 Civ. 2498 (CSH).**

United States District Court,
S.D. New York.

June 24, 1991.

**826**

Conway & Conway, New York City (Thomas D. Conway, of counsel), for plaintiff.

Stumpp & Mandaville, New York City (Gary D. Stumpp, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action arising under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.*, defendant moves under the Federal Arbitration Act, 9 U.S.C. §§ 1, 4 to stay the action and compel arbitration; or, in the alternative, to dismiss the complaint for failure to allege fraud with the particularity required by Rule 9(b), Fed.R.Civ.P., and to direct the joinder of an additional party defendant under Rule 19(a).

### Background

The amended complaint[1] alleges that plaintiff Philip Karasyk is an individual engaged primarily in the business of the purchase and sale of commodity futures contracts on behalf of himself and others. Defendant Marc Commodities Corp. is a corporation registered pursuant to the Commodity Exchange Act as a futures commission merchant, and is also a clearing member and member firm of the New York Mercantile Exchange (the "NYMEX"). NYMEX is registered with the Commodities Futures Commission, pursuant to 7 U.S.C. § 7(a), as a contract market for the trading of futures contracts. It is located at 4 World Trade Center, New York City.

The complaint further alleges that the Chicago Corporation ("Chicago Corp.") is registered under the Commodity Exchange Act as a futures commission merchant, and is also a clearing member and member firm of NYMEX. Chicago Corp. maintains a business office at 71 Broadway, New York, New York. It carries a customer futures account on behalf of plaintiff.

The complaint's factual allegations are as follows:

9. Upon information and belief, on or about March 1, 1990, person or persons unknown to plaintiff entered into futures transactions executed on NYMEX for the purchase of certain crude oil futures contracts. In accordance with the by-laws and rules of NYMEX, said contracts were obligated to be cleared in a customer segregated or house account carried by a clearing member of NYMEX.

10. Upon information and belief, on or about March 1, 1990, person or persons unknown to plaintiff caused the above mentioned futures transaction to be placed into plaintiff's customer futures account carried by Chicago Corp.

11. Upon information and belief, on or about March 2, 1990, Chicago Corp. transferred such futures transactions as instructed by defendant to a segregated account maintained by defendant on behalf of a customer.

12. Defendant accepted such futures transactions and cleared such trades in its normal course of business and further maintained this position up to March 6, 1990.

13. On March 6, 1990 defendant, acting in contravention of NYMEX rules and applicable laws, began to transfer said trades back to the account of plaintiff at Chicago Corp.

14. On or about March 7, 1990, defendant, after having accepted and cleared said trades as of March 1, 1990, without

---

1. Plaintiff's original complaint alleged jurisdiction under the Civil RICO statute, 18 U.S.C. §§ 1961–1968, in addition to the Commodity Exchange Act. Following entry of this Court's order directing the filing and service of a RICO case statement, plaintiff amended his complaint so as to delete the RICO claim.

the authority or the consent of the plaintiff, transferred the remaining trades to Chicago Corp. for the account of the plaintiff.

15. As a result of defendant's refusal to accept responsibility for said trades, plaintiff's clearing agent, Chicago Corp. was required to clear such trades on behalf of plaintiff. Thereafter, plaintiff liquidated the trades and suffered a serious financial loss in his futures trading account.

On the basis of these allegations, Karasyk asserts three causes of action against defendant Marc Commodities Corp. The first alleges that Marc "knowingly, deliberately and with an attempt to deceive, ... transferred trades previously carried in segregated accounts for the account of its customers to the plaintiff's account without the plaintiff's knowledge or consent," in violation of § 4b of the Commodity Exchange Act. Amended complaint, ¶ 17. Defendant is alleged to have acted in this manner "for the purposes of generating commissions while rejecting other transactions and transferring them to the plaintiff's account." ¶ 18.

The second cause of action alleges that defendant "falsely and fraudulently represented to plaintiff's clearing agent, the Chicago Corp., that the futures transactions previously cleared by defendant as of March 1, 1990 were owned by the plaintiff;" and further represented to Chicago Corp. that "transactions were to be transferred and given up to Chicago Corp. on behalf of plaintiff." ¶ 22. Those representations are alleged to have been "false and fraudulent," in that defendant "knew that said futures contracts did not belong to plaintiff but rather were owned and executed by person or persons unknown to plaintiff but who were customers of the defendant." ¶ 23. The amended complaint further alleges that these representations "were known by the defendant to be false when made and were made with the intent to deceive the plaintiff and induce the plaintiff's clearing agent, Chicago Corp., to accept the transfer of said futures contracts." Chicago Corp. is alleged to have "believed said representations and in re-liance thereupon, was induced to accept the transfer of said futures transactions from the defendant." ¶ 24. Plaintiff's second cause of action further alleges that defendant cleared and retained futures transactions in its own account or accounts maintained by defendant for its customers "for a period of time in excess of that which was permitted to the by-laws and rules of NYMEX." ¶ 21.

Plaintiff's third cause of action sounds in negligence and is pleaded on the basis of pendent and ancillary jurisdiction.

Defendant moves to stay these proceedings and to compel arbitration, relying upon provisions of the National Futures Association Code of Arbitration. Judging by the motion papers, the parties agree that this Code applies to the conduct in which they were engaged. They dispute whether, in the circumstances of the case, arbitration is mandatory. In that regard, it is pertinent to note that plaintiff is an Associate Member of the National Futures Association ("NFA"). The parties do not appear to dispute that status.

If arbitration is not compelled, defendant argues that the claim must be dismissed for failure to plead fraud with the specificity required by Rule 9(b). Defendant also contends that, if the litigation goes forward, Chicago Corp. must be joined as a party defendant under Rule 19(a).

## Discussion

### Arbitration

Arbitration is a matter of contract. A party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so in writing. The function of the Federal Arbitration Act is to render "valid, irrevocable, and enforceable" any "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ..." 9 U.S.C. § 2.

Membership or participation in a commercial body such as the NFA may bind individuals or companies to arbitration provided for the by-laws or rules of such an

organization. The parties at bar do not dispute that general principle. The question is whether the NFA Code mandates arbitration of Karasyk's claims against Marc.

■ Marc relies upon § 2(a) of the NFA manual, which provides in pertinent part as follows:

(a) Mandatory Arbitration.

(1) Claims. Except as provided in Sections 5 and 6 of this Code with respect to timeliness requirements, the following disputes shall be arbitrated under this Code if the dispute involves commodity futures contracts and does not require for its adjudication the presence of witnesses or other third parties over whom NFA lacks jurisdiction and who are not otherwise available:

(i) a dispute for which arbitration is sought by a customer against a Member or employee thereof; or Associate, provided that—

(A) the customer is not a future commission merchant, floor broker, Member or Associate;

(B) the dispute does not solely involve cash market transactions that are not part of or directly connected with a commodity futures transactions; and

(C) if brought against a Member or employee thereof, the Member is a futures commission merchant, an introducing broker, a commodity pool operator or a commodity trading advisor.

(ii) a customer claim that is required to be arbitrated by NFA under a lawful agreement that complies with Commission Rule 180.3.

(iii) a customer claim whose resolution has been delegated to NFA by a contract market under Section 5a(11) of the Commodity Exchange Act.

(iv) a dispute for which arbitration is sought between Members in the categories listed in Section 2(a)(1)(D) [sic; should be "C"] of this Code, or employees thereof or Associates, where at least one such Member or employer of such employee or Associate is not a member of a contract market.

This language is not a model of clarity. However, it seems clear enough if Karasyk were a "customer" of Marc Commodities Corp. *and* not a "futures commission merchant, floor broker, Member, or Associate," Marc could compel arbitration of Karasyk's claim against it under Section 2(a)(1)(i)(A). But Karasyk, as noted, is an Associate Member of the NFA. Accordingly, the case falls to be decided under Section 2(a)(1)(iv), which provides for mandatory arbitration of "a dispute for which arbitration is sought between Members ..."

Marc says that under a proper construction of that provision, either party may demand and compel arbitration. Karasyk says that whether or not "arbitration is sought" depends on the option of the Member (Associate or otherwise) asserting the claim. If the claimant opts for arbitration (that is, seeks it), arbitration is mandatory, but not otherwise. Arbitration is not mandatory in the instant case, Karasyk concludes, because he has not sought it.

In aid of that interpretation, plaintiff offers a letter written by Kathryn Page Camp, Assistant General Counsel of the NFA. The Camp letter states "Mr. Karasyk would not be subject to mandatory arbitration at National Futures Association." Camp says that the NFA interprets Section 2(a)(1)(iv) "narrowly" in order to avoid conflict with regulations of the Commodity Futures Trading Commission, 17 C.F.R. § 180.5, made applicable to the NFA through 17 C.F.R. § 170.8. After quoting the regulation and its pertinent definitions, the Camp letter concludes:

All of this is a very long way of saying that, absent the consent of both parties, NFA will not hear disputes between NFA Members, employees thereof, or Associates unless the claimant is filing as a customer of the respondent. Furthermore, even mandatory arbitration is not mandatory in the sense that it precludes filing the claim with some other forum rather than NFA.

Defendant argues in its Reply Brief at 1–2 that the Court "is not bound by a self-regulatory organization's staff opinion re-

garding the applicability of a provision such as the one in question" and should instead follow the "clear meaning of the NFA Code." I reject that argument. I do not regard the provisions for mandatory arbitration in the NFA Code to be expressed with such clarity as to require disregarding the interpretation placed upon the language by the organization whose rules are said to mandate arbitration. The interpretation of the NFA's Assistant General Counsel flies in the face of defendant's contention that, as an Associate Member of the NFA, Karasyk expressly agreed to arbitrate these particular disputes; and yet his consent to arbitrate is a condition precedent to a motion to compel him to do so.

Defendant's motion to compel arbitration will be denied.

*Rule 9(b)*

Rule 9(b) is implicated because plaintiff's first and second causes of action sound in fraud.

Before analyzing the amended complaint, it is useful to review pertinent Second Circuit authority.

■■■ Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) must be read together with Rule 8(a) which requires only a "short and plain statement" of the claims for relief. *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). On a motion to dismiss, the court assumes the truth of plaintiff's factual allegations, *Ouaknine* at 78, reads the complaint generously, and draws all inferences in favor of the pleader. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 562 (2d Cir.1985). But Rule 9(b) must be enforced so as to accomplish its three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of his defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the

number of strike suits. *DiVittorio* at 1247.

■■■ To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Cosmas* at 11. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *DiVittorio* at 1247. However, no specific connection between fraudulent representations or omissions need be pleaded as to defendants who are insiders or affiliates personally participating in the statements at issue. *DiVittorio* at 1247 (offering memorandum); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986) (same).

■■■ A complaint may adequately identify the statements alleged to be misrepresentations and properly indicate when, where and by whom they were made, yet still fail Rule 9(b) scrutiny if the complaint does not allege circumstances giving rise to a strong inference that defendant knew the statements to be false, *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990), and intended to defraud plaintiff, *Ouaknine* at 80; *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

■■■ Knowledge is a state of mind. So is intent to defraud, or "scienter." While Rule 9(b) permits conditions of mind to be averred generally, the rule also requires that allegations of scienter be supported by facts giving rise to a "strong inference" of fraudulent intent. *Ouaknine* at 80; *Beck* at 50; *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987).

Allegations supporting an inference of fraudulent intent frequently include defendant's statement that a fact exists or an event will come to pass coupled with allega-

tions that the fact did not exist or the event did not occur, and circumstances indicating that the statement was false when made. *See, e.g., Luce* at 56 (alleged misrepresentation in offering memorandum that general partners would make an initial capital contribution of $385,000 and guarantee a $4.5 million construction loan accompanied by allegations that general partners contributed only $80,000 and did not guarantee the loan); *DiVittorio* at 1248 (offering memorandum's statement that proceeds of offering would be expended as quickly as possible accompanied by allegation that proceeds were *never so applied, and estimate that property contained approximately 9,260,000 tons of coal accompanied by allegation that mines did not contain nearly that much). See Ouaknine* at 81 for a comparable analysis.

■ To satisfy the scienter requirement, a plaintiff need not allege facts which show a defendant had a motive for committing fraud, so long as plaintiff adequately identifies circumstances indicating "conscious behavior" by the defendant from which an intent to defraud may fairly be inferred. *Cosmas* at 13. However, where a particular defendant's motive to defraud is not apparent, the strength of the circumstantial allegations must be correspondingly greater. *Beck* at 50.

■ The defendant's status and function are important factors. For example, an outside director's liability, if any, must be that of an aider and abettor, a conspirator, or a substantial participant in fraud perpetrated by others; and conclusory allegations of aiding and abetting or conspiracy are not enough. *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982). Where third-party advisers are concerned, the complaint must allege circumstances allowing a strong inference of knowledge of liability. *Devaney v. A.P. Chester,* 813 F.2d 566, 568 (2d Cir.1987) (investment banker).

■ Allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge. *Luce* at 54 n. 1.; *DiVittorio* at 1247–48. However, that exception to Rule 9(b)'s general requirement of particularized pleading does not constitute a license to base claims of fraud on speculation or conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy a relaxed pleading standard. *Wexner* at 172.

■ If I correctly understand the present plaintiff's first and second causes of action, he does not allege specific or express misrepresentations of fact or fraudulent omissions in conversations or communications generated by Marc. Rather, plaintiff contends that misrepresentations or omissions were implicit in Marc's conduct, namely, the acceptance of trades and transfer of trades. An example appears in ¶ 22, where it is alleged that "defendant falsely and fraudulently represented to plaintiff's clearing agent, the Chicago Corp., that the futures transactions previously cleared by defendant as of March 1, 1990 were owned by the plaintiff." If plaintiff means anything other than a representation implied in Marc's conduct with respect to these trades, then clearly the complaint is deficient under Rule 9(b). If statements other than conduct are intended to be pled, the pleading gives no information with respect to when and where pertinent statements were made, who made them, and in what particular respects they are alleged to be fraudulent.

Assuming that these particular deficiencies cannot be urged against the amended complaint at bar, the allegations in respect of knowledge and intent to defraud are entirely deficient. Plaintiff begins his factual account with the allegation that on or about March 1, 1990, "person or persons unknown to plaintiff" caused the futures transactions in questions to be placed into his customer futures account carried by Chicago Corp. The amended complaint then goes on to allege conduct by Marc, subsequent to the activities of these mysterious agents of mischief; but the allegations of knowledge and scienter on the part of Marc are impermissibly conclusory. The allegations of motive are particularly frail.

As to the first cause of action, plaintiff alleges that defendant acted in a collusive fashion for the purpose of "generating commissions." Presumably Marc generates commissions through licit as well as illicit trades. The earning of commissions, without more, is not a badge of fraud. As for the second cause of action, plaintiff alleges that defendant intended to deceive plaintiff and induce Chicago Corp. to accept the transfer of the futures contracts in question, without suggesting why Marc would be motivated to act in such a manner. In the absence of such allegations concerning motive, plaintiff is under a more stringent obligation to plead circumstances justifying the inference of a fraudulent intent on the part of defendant. The amended complaint is deficient in that regard.

Accordingly the amended complaint will be dismissed for failure to plead fraud in conformity with Rule 9(b). I will grant leave to plaintiff to replead, if he and his counsel are in a position to do so consistent with the requirements with Rule 11.

█ The third cause of action, asserted under pendent jurisdiction, depends upon the viability of the causes of action for fraud alleged under the federal statute. I would not retain jurisdiction of that state law claim if plaintiff cannot allege a viable claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly the complaint will be dismissed in its entirety, with leave to replead.

*Rule 19(a)*

█ Defendant argues that the Chicago Corp. must be joined as a party defendant under Rule 19(a), which provides in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties

...

Even in the absence of a motion by one of the litigants, courts have an obligation to protect the interests of an absent party, if those interests are sufficiently implicated by the litigation. Professor Moore says generally:

Where the rights of the absent person are so tied to the litigation that it would be impossible in equity and good conscience to proceed without his joinder, ... the trial court and appellate court have the power and the duty to act sua sponte to protect the rights of the absent person, whether by ordering that he be added or, if this is not feasible, by dismissing the action. 3A *Moore's Federal Practice* (2d ed. 1989) at p. 19–80–81 (footnotes omitted).

In addition to this concern for the interests for the absent party, the Supreme Court has observed that "the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968).

While I recognize these salutary principles, I am not persuaded that this is an appropriate action for joinder under Rule 19(a). I read the complaint to allege that the Chicago Corp., as plaintiff's clearing agent, was an indirect victim of the fraud which plaintiff charges against defendant. *See, e.g.,* the amended complaint at ¶¶ 22 and 24. While as noted plaintiff's present factual allegations are imprecise, they do not presently suggest a basis for direct liability on the part of the Chicago Corp. to plaintiff. Nor does Marc, on this motion, suggest the existence of one or another of the potential risks to defendants identified by the Supreme Court in *Provident.*

To be sure, defendant is at a disadvantage in that regard, given the murkiness of the plaintiff's factual allegations. But I think the proper course is to deny defendant's motion under Rule 19(a) at this time, without prejudice to reassertion if plaintiff clarifies the situation by filing an amended complaint which conforms with Rule 9(b).

*Conclusion*

For the foregoing reasons, defendant's motion to stay proceedings and compel arbitration is denied.

Defendant's motion to dismiss the complaint for failure to comply with Rule 9(b) is granted. If so advised, plaintiff may file and serve an amended complaint within forty-five (45) days of the date of this Memorandum Opinion and Order.

Defendant's motion to direct the joinder of the Chicago Corporation as a party defendant under Rule 19(a) is denied.

Plaintiff's motion to compel defendant to answer interrogatories is denied.

If plaintiff files a further amended complaint, counsel for the parties are directed to attend a status conference on September 27, 1991, in Room 307 at 2:30 p.m.

It is SO ORDERED.