Keith **ASDOURIAN,** and Blue Chip Mortgage Corp., Plaintiffs,

v.

Gary **KONSTANTIN,** Rahim Ali, John Murphy, Sr., Reliance Mortgage Corp., Teri Gungor, The Hip Hop Café, United Companies Lending Corp., Harold Pierre, Salvatore Cariola, Ruthven Prithwie, Harvey Glaser, Adi Okeon, Augusto Jalon, Michael Funding, LLC, Linda Funding, LLC, Benjamin Funding, LLC, Reliance Mortgage Banking Corp., Michael Harris, Michael Harris Consulting Inc., and Alliance Mortgage Corp., Defendants.

No. CV–98–7659 (ADS).

United States District Court, E.D. New York.

Dec. 21, 1999.

Sam P. Israel, P.C., New York City, for Plaintiffs.

Ryan & Brennan LLP, Floral Park, NY (James E. Ryan, John Brennan, of counsel), for Defendants Gary Konstantin, Reliance Mortg. Corp., Reliance Management Corp., Reliance Mortgage Banking Corp., Hip Hop Cafe.

Heller, Horowitz & Feit, P.C., New York City (Eli Feit, Stuart A. Blander, of counsel), for Defendant Rahim Ali.

Winick & Rich, P.C., New York City (Joseph E. Field, Scott Wyner, of counsel), for Defendants Michael Funding, LLC, Linda Funding, LLC, Benjamin Funding, LLC.

Certilman Balin Adler & Hyman LLP, East Meadow, NY (Candice Gladston, Patrick McCormick, of counsel), for Defendants John Murphy and Alliance.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Blue Chip Mortgage Corporation ("Blue Chip") is a defunct mortgage banking corporation. The plaintiff Keith Asdourian ("Asdourian") was the sole shareholder and President of Blue Chip. According to the plaintiffs' amended complaint, as a result of a series of fraudulent transactions committed by the defendants, Blue Chip lost its banking license, monetary assets and goodwill. The amended complaint alleges that the defendant Gary Konstantin ("Konstantin"), on behalf of Blue Chip, sold a series of fraudulent mortgages to various banks. In an effort to make the applicant appear creditworthy, Konstantin is alleged to have falsified various documents such as tax returns, employment records and bank verifications. It is further alleged that this scheme was orchestrated by Konstantin in an effort to defraud the banks who paid for the mortgages, divert money from Blue Chip, repay personal loans and purchase real estate for himself. Also, it is alleged that three of the other named defendants, Ruthven Prithwie ("Prithwie"), Adi Okeon ("Okeon") and Rahim Ali ("Ali") (collectively, the "Konstantin Group"), assisted and participated with Konstantin in his scheme to defraud the banks and divert money from Blue Chip for their personal use.

Presently before the Court are two separately filed motions. Ali moves pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") to dismiss the plaintiffs' amended complaint. Similarly, Konstantin, Reliance Mortgage Corp., the Hip Hop Café, Reliance Management Corp. and Reliance Mortgage Banking Corp move pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) seeking dismissal of the plaintiffs' amended complaint.

### I. BACKGROUND

The following facts are taken from the plaintiffs' amended complaint, filed on De-

cember 20, 1998. The plaintiffs allege that in early 1996, the Konstantin Group approached Blue Chip, a mortgage banker licensed with the New York State Department of Banking, and its principal Asdourian, regarding a joint venture in the mortgage service industry. Konstantin stated that he heard that Asdourian had just received his banking license and that he, with his substantial experience in this particular area could help get his business off the ground in a manner in which it would otherwise take Blue Chip years to achieve. Apparently, the Konstantin Group represented that it would help Blue Chip generate substantial revenues.

Based on these representations, Blue Chip and the Konstantin Group entered into a written joint venture agreement dated July 18, 1996, in which they agreed to join forces and pursuant to which, Konstantin was named Chief Executive Officer of Blue Chip and added as a signatory to Blue Chip's bank accounts and warehouse lines. According to the amended complaint, warehouse lines are lines of credit given by a "warehouse" bank to fund the mortgages given by Blue Chip to its clients, the loan applicants. The plaintiffs allege that in October, 1997 they discovered substantial withdrawals for personal use by the Konstantin Group of Blue Chip funds, including the purchase of properties in Pennsylvania. Upon learning of this, Asdourian removed Konstantin as a signatory on the Blue Chip bank accounts.

The plaintiffs allege that when Asdourian confronted Konstantin with this, he became enraged and threatened to kill him. In addition, Konstantin revealed that he had a criminal record and had been arrested for insurance fraud in the past. Despite these alarming statements, the plaintiffs agreed to reinstate Konstantin as signatory to the bank account. Thereafter, the plaintiffs allege that the Konstantin Group falsified documents such as tax returns, and employment and bank verifications for mortgage applicants so as to make such applicants more credit worthy than they actually were, thereby generating funds for their own benefits. In addition, the plaintiffs contend that Konstantin sold loans to another company for $100,000, far below the loans' fair market value.

Despite this activity by the Konstantin Group, the plaintiffs continued to work with them in order to rectify problems such as a number of banks who requested that Blue Chip buy-back the mortgages that they were sold due to irregularities. In April, 1998, Blue Chip's office in Westbury was burglarized. The plaintiffs allege "upon information and belief" that the Konstantin Group orchestrated this break in to recover records that would have exposed their unlawful conduct regarding the buy-back loans. Approximately 1½ years after learning of Konstantin's unscrupulous conduct, in May, 1998 Asdourian finally moved out of Blue Chip's Westbury offices and entered into an agreement to sell Blue Chip to the Konstantin Group. Some time later, Asdourian learned that the Konstantin Group had purchased multiple parcels of land in New York and Pennsylvania with Blue Chip funds. As a result of the conduct outlined above, the plaintiffs filed a twelve count complaint alleging violations of RICO, conversion, an action for indemnification, breaches of fiduciary duties, common law fraud, breach of contract, and fraudulent conveyances.

## II. DISCUSSION

### A. *Fed.R.Civ.P. 12(b)(6)*

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 44 (2d Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957] ); *see also IUE AFL—CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993),

*cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 [2d Cir.1991] ); *see also International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), and in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true, *see Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 140 (2d Cir. 1999); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty,* 933 F.2d at 123; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 [2d Cir.1976] [per curiam] ).

### B. *Fed.R.Civ.P. 9(b)*

■ When pleading a claim for fraud or misrepresentation, the plaintiff must aver the alleged fraudulent acts with particularity as required by Fed.R.Civ.P. 9(b). *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). Although "knowledge" and "condition of mind" may be stated in general terms (*see* Fed.R.Civ.P. 9[b] ), the circumstances surrounding the alleged fraud must be pled with particularity. *See Moore v. Painewebber, Inc.,* 189 F.3d 165, 173 (2d Cir.1999); *Farley v. Baird, Patrick & Co.,* 750 F.Supp. 1209, 1217 (S.D.N.Y.1990) (quoting *Eickhorst v. American Completion & Dev. Corp.,* 706 F.Supp. 1087, 1091 [S.D.N.Y.1989] ).

■ To satisfy the particularity requirement of Rule 9(b), the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore,* 189 F.3d at 173 (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 [2d Cir.1989] ). Specifically, "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990).

■ Facts must be pled with sufficient particularity to support a "strong inference" that the defendant possessed

the requisite fraudulent intent or scienter. *See Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir.1994). Moreover, such allegations may not merely rest upon statements based on "information and belief." *See Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (citations omitted).

The particularity requirement of Rule 9(b) is designed to serve several important policies, such as to afford the defendant fair notice of the claims, to safeguard the defendant's reputation and also to inhibit the institution of "strike suits." *See Campaniello Imports v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997).

 If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them. *See Lou v. Belzberg*, 728 F.Supp. 1010, 1022 (S.D.N.Y. 1990). However, specific connection need not necessarily be made between the fraudulent representations and the specific defendants where the defendants are insiders. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

### C. *Ali's Motion to Dismiss*

Ali essentially makes three arguments in support of his motion to dismiss. First, Ali argues that the amended complaint amounts to a "group pleading" and thus fails to provide specific allegations of any wrongdoing. In particular, Ali claims that "in virtually every paragraph the Amended Complaint alleges that various wrongs and frauds were committed by 'the Konstantin Group,' without making any attempt to particularize the allegedly wrongful conduct of each 'member' of the Group, such as defendant Ali." Ali's second argument in favor of dismissal is that even if the amended complaint complies with Rule 9(b), it fails to state a RICO claim since the intended target of the alleged wrongs was not Blue Chip or Asdourian, but were the third party lenders/banks that were enticed into making the loans to customers

with falsified records. Finally, Ali claims that the state law causes of action should be dismissed under the "group pleading" theory. In addition, Ali asserts that the claims for breach of contract, breach of fiduciary duty and indemnification should be dismissed as they are based upon a 1996 Joint venture Agreement that was never approved by the New York State Superintendent of Banking.

### 1. Group Pleading

As previously stated, where multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each of them. *See Lou v. Belzberg*, 728 F.Supp. 1010, 1022 (S.D.N.Y.1990).

 It cannot be disputed that the amended complaint makes numerous references to the Konstantin Group without specifying the member of the "Group" responsible for the alleged fraudulent activity. However, the amended complaint does allege the time, place, speaker, and the alleged misrepresentations committed by Ali. As such, the amended complaint alleges sufficient particular facts to support a "strong inference" that Ali possessed the requisite fraudulent intent or scienter.

For example, the amended complaint makes the following specific allegations with regard to Ali:

> Ali falsified tax returns, employment verifications and bank verifications for the mortgage applicants.

> As such, the banks who purchased the Buy–Back Loans from Blue Chip purchased mortgages whose borrowers were less credit-worthy than represented by Blue Chip due to Ali's . . . fraudulent conduct.

\* \* \* \* \* \*

Ali, the loan officer in charge of the Buy–Back Loans, was an extremely close colleague of Konstantin's who had worked side-by-side with the defendant for approximately 5 years. Not surpris-

ingly, Ali was a big "producer" for Blue Chip, generating a great deal of revenues based on the number of mortgage applicants he recruited and eventually had approved. The Plaintiffs would later learn that the key to Ali's success was his provision of false documents for certain mortgage applicants. Since it did not affect Ali or the Konstantin Group if the mortgage applicant eventually defaulted on their loans (the loans having been resold to a third-party bank), this scheme to falsify credit documents resulted in extraordinary risk-free profits for the Konstantin Group....

(Amended Complaint at ¶¶ 31, 35).

The plaintiffs' amended complaint sufficiently sets forth allegations specifically directed at Ali. In this regard, the Court notes the approximate 92 separate allegations against the Konstantin Group, of which Ali is a member and is alleged to have acted in concert with the other members. As previously noted, connections between the fraudulent representations and the specific defendants are not necessary where the defendants are insiders. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). As such, the Court finds that with regard to Ali, the plaintiffs' amended complaint satisfies Rule 9(b)

### 2. Failure to State a Claim Under RICO

■ Ali claims that the RICO claim against him must be dismissed as the amended complaint fails to allege a sufficient injury that resulted from his alleged conduct. In order to adequately plead a RICO claim, a "plaintiff must allege that he was injured in his business or property by reason of a violation of section 1962." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir.1983), *cert. denied sub nom., Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984) (citations omitted). It is the plaintiffs burden to demonstrate that the injury alleged was actually and proximately cause by the predicate acts

that form the pattern of racketeering activities. *Sperber v. Boesky*, 849 F.2d 60, 63–6 (2d Cir.1988). In *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25 (2d Cir. 1990), the Second Circuit stated that "[t]he RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Id.*

■ Assuming the facts as alleged in the plaintiffs' amended complaint to be true, as the Court must when deciding a Rule 12(b)(6) motion to dismiss, the plaintiffs' have adequately set forth that they were injured as a proximate result of the conduct of Ali. The amended complaint claims that is a result of Ali's conduct with regard to the falsification of mortgage applications, the plaintiffs were "required to make these banks whole for their losses...." In addition, the amended complaint contends that as a result of Ali's actions, "Blue Chip's assets have been siphoned away by Konstantin and his colleagues, leaving the company poised for extinction and its owner, Plaintiff Asdourian facing grave damages, suddenly having been confronted by claims and regulatory grievances of countless variety...." The Court finds that injuries alleged in the plaintiffs' amended complaint are not attenuated from the conduct that Ali is alleged to have undertaken. Clearly, if Ali falsified documents in connection with potential mortgages, it is reasonably foreseeable that both the banks that purchased the mortgages as well as Blue Chip and Asdourian would eventually suffer economic injury to their business, reputation and property. Accordingly, Ali's motion to dismiss the amended complaint on the basis that it fails to properly set forth that the plaintiffs were injured, is denied.

### 3. The State Law Causes of Action

Ali's arguments in support of his motion to dismiss the state law causes of action on the grounds of failure to comply with Rule

9(b) is denied for the reasons set forth directly above in section II(C)(1).

■ Ali's also claims that the plaintiffs' breach of contract, breach of fiduciary duty and indemnification claims should be dismissed as the July 18, 1996 Joint Venture Agreement, on which those claims are based, was not approved by the New York State Superintendent of Banking. While Ali has attached a copy of the Joint Venture Agreement as an exhibit, it appears that the plaintiffs' deny this factual assertion. Regardless, in the context of a motion to dismiss pursuant to Rule 12(b)(6), the Court will not engage in an analysis of extrinsic documents. This is especially true where one party denies the underlying factual assertion and where the plaintiffs specifically request the opportunity to "present evidence," should the Court contemplate dismissal. While this issue may be ripe after the completion of discovery, and both parties are given the opportunity to attach various exhibits and testimony to their motions for summary judgment, the Court declines to address this issue in the context of a motion to dismiss pursuant to Rule 12(b)(6). Accordingly, Ali's motion to dismiss the state law causes of action is denied.

### D. *The Motion to Dismiss by Konstantin, Reliance Mortgage Corp., The Hip Hop Café, Reliance Management Corp. ad Reliance Mortgage Banking Corp.*

Konstantin, Reliance Mortgage Corp., The Hip Hop Café, Reliance Management Corp. and Reliance Mortgage Banking Corp. (collectively, the "Konstantin defendants") move to dismiss the RICO cause of action in the amended complaint "due to the fact that it fails to meet the particularity requirements imposed upon it by Fed. R.Civ.P. 9(b)." The Konstantin defendants also move to dismiss the state law causes of action as their would be no independent federal jurisdiction if the RICO claim was dismissed.

While the moving defendants and Ali have filed separate motions to dismiss, many of Ali's arguments have been adopted by reference. The moving defendants argue first, that the amended complaint amounts to a "group pleading" and thus fails to provide specific allegations of any wrongdoing. In addition, the moving defendants claim that the RICO claim fails to set forth with sufficient particularity the specific acts upon which the RICO claim is based.

### 1. Group Pleading

■ As previously stated, where multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them. *See Lou v. Belzberg,* 728 F.Supp. 1010, 1022 (S.D.N.Y.1990). However, where the defendants are "insiders," the connection between the fraudulent representations and the specific defendants is not necessary. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

The amended complaint clearly sets forth specific factual allegations against the moving defendants. By way of example, the following paragraphs are taken from the amended complaint with regard to Konstantin:

Konstantin ... by and through an array of entities he owns and/or controls has: manufactured ... falsified financial statements to justify and resell home mortgages; converted, by means of interstate commerce, the proceeds of other loans, and; acquired property on behalf of Blue Chip, only to fraudulently convey such assets to himself and others....

Blue Chip's assets have been siphoned away by Konstantin.

When being confronted about the misappropriation of Blue Chip's funds, Konstantin became enraged and threatened Asdourian, "I'm gonna kill you."

On or about August 18, 1998 Plaintiffs closed out the Blue Chip bank accounts

and discovered that Defendant Konstantin had withdrawn all the monies therein.

(Amended Complaint at ¶¶ 1–2, 26, 48). The following examples are from the amended complaint involving Reliance Mortgage Corp., The Hip Hop Café, Reliance Management Corp. and Reliance Mortgage Banking Corp.

> Reliance [Mortgage Corp.] is a corporation wholly owned by Konstantin.

> Reliance [Mortgage Corp] also conducts business under the assumed name of defendant Reliance Management [Corp.]

> Reliance Banking [Corp.] is a corporation also owned and controlled by Konstantin.

> The Hip Hop Café is ... a wholly owned corporation of Reliance....

> Among other achievements, Konstantin would raise in his effort to induce Asdourian into doing business with his group was that the Konstantin Group had formed the Reliance Corporation and leased approximately 8,000 square feet of office space....

> In or about early summer of 1998 ... the Konstantin group ... took Blue Chip employees, records, [and] equipment ... and moved them to a building ... owned by the Konstantin Group's corporate shell, Reliance.

> The Konstantin Group, through its corporate shell Reliance, used Blue Chip monies to purchase multiple parcels of land....

> One of the parcels of real property would serve for a pet project of Konstantin called the Hip Hop Café.... Thus, in or about August 4, 1997, the Konstantin Group purchased the Hip Hop Café property ... by quitclaim deed, only to then convey the property from Blue Chip to Reliance (without the payment to Reliance of any consideration whatsoever).

> With Blue Chip funds, the Konstantin Group was also making payments to ...

the president of the Hip Hop Café corporation; defendant Reliance.

(Amended Complaint at ¶¶ 10–13, 20, 39 and 41). Based upon these allegations, the moving defendants have been provided with sufficient facts with regard to the alleged misrepresentations they committed in furtherance of the claim that they violated the RICO statute. The amended complaint sufficiently sets forth that Konstantin approached the plaintiffs to go into the mortgage business together under false pretenses. In addition, it is alleged that Konstantin oversaw the fraudulent depletion of Blue Chip's assets which included the diverting of money to various property and business ventures including Reliance Mortgage Corp., The Hip Hop Café, Reliance Management Corp. and Reliance Mortgage Banking Corp. As such, the Court finds that the allegations in the amended complaint comply with the requirements of Rule 9(b) and provide the moving defendants with sufficient notice of the specific factual allegations supporting the RICO charge.

### 2. The RICO Claims

The moving defendants contend that the amended complaint fails to allege specific predicate acts to support the RICO claim. The threshold pleading requirements of a private action under RICO, Section 1962, were set forth by the Second Circuit in *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), as follows:

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates

in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.... Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden—*i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs.... To satisfy this latter burden, plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." (citations omitted).

*See also Pinnacle Consultants v. Leucadia Nat'l Corp.,* 101 F.3d 900, 904 (2d Cir.1996) (discussing the standards). Section 1962 prohibits, under subsections (a) through (d), the following: (a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern or racketeering activity"; (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above. 18 U.S.C. §§ 1962(a)–(d); *see also GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 465 (2d Cir.1995), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996).

▌ To establish such a pattern of racketeering activity, "a plaintiff must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). RICO is aimed at "racketeering activity," which the statute defines, in relevant part, as certain acts indictable under Federal law, including mail and wire fraud, and violations of the Hobbs Act. 18 U.S.C. § 1961(1)(B).

A "pattern" requires at least two acts of "racketeering activity," occurring within ten years of each other. *See* 18 U.S.C. § 1961(5). To reiterate, the term "racke-

teering activity" refers to the predicate acts necessary to sustain a RICO claim and include mail fraud, wire fraud, and the Hobbs Act. *See* 18 U.S.C. § 1961(1). Those predicate acts must be crimes under state or federal law. *United States v. Angelilli,* 660 F.2d 23 (2d Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657, *rehearing denied,* 456 U.S. 939, 102 S.Ct. 1999, 72 L.Ed.2d 460 (1982); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 995 (E.D.N.Y.1995).

▌ Both the Supreme Court and Second Circuit have held that an allegation of two acts of "racketeering activity," without more, is not sufficient to establish a pattern. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. at 238–44, 109 S.Ct. 2893; *United States v. Indelicato,* 865 F.2d 1370, 1381 (2d Cir.) (en banc), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). To constitute a "pattern" of racketeering activity, the predicate acts must be related and constitute a threat of continued racketeering activity and this determination is to be made on a case-by-case basis. *H.J. Inc.,* 492 U.S. at 238–44, 109 S.Ct. 2893; *see also United States v. Alkins,* 925 F.2d 541, 551 (2d Cir.1991) (predicate acts must be related and amount to or pose a threat of continued criminal activity). In addressing the determination about a "pattern" of racketeering activity the Second Circuit noted that "[a]n interrelationship between acts, suggesting the existence of a pattern, may be established ... [by] proof of their temporal proximity, or common goals, or similarity of methods, or repetitions." *Indelicato,* 865 F.2d at 1382.

The plaintiffs' amended complaint alleges that the predicate acts in support of the RICO claim are the defendants violations of the mail and wire fraud statutes. The mail fraud statute, 18 U.S.C. § 1341, provides, in relevant part, that a person is guilty of mail fraud if:

having devised or intending to devise any scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, [the person] places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service.

■ The crux of mail fraud and wire fraud is "an intent to defraud." *United States v. Bouyea,* 152 F.3d 192, 194 (2d Cir.1998); *U.S. v. Gabriel,* 125 F.3d 89, 96 (2d Cir.1997). To establish intent to defraud, the plaintiffs must adequately allege that the "defendants contemplated some actual harm or injury to their victims. Only a showing of intended harm will satisfy the element of fraudulent intent." *United States v. Dinome,* 86 F.3d 277, 283 (2d Cir.1996) (mail fraud and wire fraud) (quoting *United States v. Starr,* 816 F.2d 94, 98 [2d Cir.1987] ); *see also In re Registry Publishing,* 68 F.3d at 580 ("In order to establish that the defendant acted with an intent to defraud, the Government must show that some actual harm or injury was contemplated by the schemer.") (internal quotation marks omitted); *United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir. 1994).

In a similar vein, the wire fraud statute, 18 U.S.C. § 1341, requires a scheme devised "to defraud, or for obtaining money or property by means of false or fraudulent pretenses, or promises," and the use of interstate wires or communications to execute the scheme. 18 U.S.C. § 1343.

■ Without reiterating the numerous paragraphs in the plaintiffs 43 page amended complaint, the Court will summarize paragraphs 60 and 61 which provide an illustration of those acts which are alleged to have been violations of the mail and wire fraud statutes described above:

[T]he use of the mails includes the mailing of loan documents to applicants, banks, mortgage brokers and others in connection with the Buy–Back Loans

and the systematic looting of Blue Chip by ... misappropriating HUD Mortgage Insurance Funds; misappropriating federal and state withholding taxes; misappropriating HUD 203K funds; selling pipeline loans to Alliance without permission and subsequently misappropriating those funds; collecting first mortgage payments from loan applicants and failing to forward these payments to [sic] appropriate bank; diverting insurance premiums from Blue Chip employees to Oxford Health Plans; and misappropriating monies collected for the payment of real estate appraisals, credit reports and flood certifications. The particular use of the wires includes the telephone conversations and facsimile transmissions vis a vis loan documents to applicants, banks, mortgage brokers and others in connection with the Buy–Back Loans and the systematic looting of Blue Chip by ... misappropriating HUD Mortgage Insurance Funds; misappropriating federal and state withholding taxes; misappropriating HUD 203K funds; selling pipeline loans to Alliance without permission and subsequently misappropriating those funds; collecting first mortgage payments from loan applicants and failing to forward these payments to [sic] appropriate bank; diverting insurance premiums from Blue Chip employees to Oxford Health Plans; and misappropriating monies collected for the payment of real estate appraisals, credit reports and flood certifications.

(Amended Complaint at ¶¶ 60–61). The Court finds that these allegations, in conjunction with other claims contained in the plaintiffs' amended complaint, comply with Rule 9(b) and are sufficient to plead RICO predicate acts. Based upon these allegations, the defendants have been given adequate notice to permit them to answer the complaint and otherwise prepare to defend the case at trial. Accordingly, the Konstantin defendants motion to dismiss the RICO claim for failure to sufficiently set forth the predicate acts is denied.

### 3. The State Law Causes of Action

As the Court has declined to dismiss the federal RICO claim, the motion by the Konstantin defendants to dismiss the state law causes of action for lack of independent jurisdiction is denied.

## III. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above, it is hereby

**ORDERED,** that the motion by Ali to dismiss the amended complaint is **DENIED;** and it is further

**ORDERED,** that the motion to dismiss the amended complaint by Konstantin, Reliance Mortgage Corp., The Hip Hop Café, Reliance Management Corp. and Reliance Mortgage Banking Corp. is **DENIED;** and it is further

**ORDERED,** that as previously directed in the Court's prior Memorandum of Decision and Order dated May 17, 1999, all parties are to continue to proceed with discovery on an expedited basis and appear for jury selection on January 18, 1999 at 9:00 AM.

**SO ORDERED.**